## WATERS v. SHINN.

(Circuit Court, W. D. Arkansas, Ft. Smith Division, October 7, 1907.)

**1. PLEADING (§ 400\*)—DEFECTS WHICH MAY BE CURED—WANT OF AVERMENT AS TO JURISDICTION.**

In a suit in a state court to cancel a contract for the sale of certain land and for an injunction and a receiver, the property having been so described that the chancellor and the receiver knew what property was to be seized, and some of it having been seized, and afterwards retained by the party in possession, and a bond having been given under the chancellor's directions, the court did not lose jurisdiction because of a failure of counsel to allege in the bill the county in which the property was situated; such defect being curable by amendment.

[Ed. Note.—For other cases, see Pleading, Dec. Dig. § 400.\*]

**2. EJECTMENT (§ 120\*)—JUDGMENT—EXECUTION.**

Execution of a judgment for the recovery of real estate involves the issuance of a writ of possession, commanding the marshal to seize the property and place the successful party in possession.

[Ed. Note.—For other cases, see Ejectment, Dec. Dig. § 120.\*]

**3. COURTS (§ 500\*)—STATE AND FEDERAL COURTS—JURISDICTION.**

In a suit in a state court to cancel a land contract and for an injunction restraining a conveyance of the property to any one other than the complainant in such suit, the court, having appointed a receiver, thereafter modified the order so as to permit one of the defendants to give bond for the property, conditioned that he would have it forthwith on a subsequent day named in the order and limited the receiver to taking an inventory of the property. The receiver was subsequently discharged, but later reinstated with the rights and powers specified in the order modifying his powers under the original appointment and so remained.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held,* that the bond for the modification of such order was not a forth-coming bond, but a common-law bond, and that, though the receiver did not take actual possession of the realty, the same was nevertheless in custodia legis, and hence complainant during the pendency of such suit could not maintain ejectment in a federal court against the tenant of the receiver.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1408; Dec. Dig. § 500.*]

Bill by William D. Waters against Edwin Shinn. Bill dismissed.

Jo Johnson, for plaintiff.

Bullock & Davis, L. C. Hall, and J. B. McDonough, for defendant.

ROGERS, District Judge. The plaintiff, William D. Waters, filed in this court on March 8, 1907, a complaint at law against Edwin Shinn, containing two counts, one in the nature of ejectment, and the other in the nature of forcible entry and detainer. Summons was issued the same day, delivered to the marshal on March 10th, and served on the defendant on March 21st, following. On April 29, 1907, the plaintiff filed an amended complaint in ejectment. It is alleged in the complaint that the properties described therein are situate in the county of Yell, in the state of Arkansas. Pretermitting any notice of other pleadings in the case, the defendant Shinn, on June 10th, filed in this court a pleading denominated a "plea in abatement," in four paragraphs, and later, on July 8, 1907, filed an amendment to the second paragraph of his answer. In the first paragraph of the plea in abatement the defendant says that:

"At the time of the filing of the plaintiff's complaint, this defendant was in possession of the property therein described under and by virtue of the orders of the chancery court of Yell county, Ark., for the Dardanelle district in a suit there pending involving the same subject-matter and the possession of the same property described in plaintiff's complaint as aforesaid, and wherein the said William D. Waters has been made a defendant by orders of the said chancery court; that said property was at and before the filing of plaintiff's complaint, and is now, under the control and in the custody of one W. L. Tatum, as receiver, duly appointed by said chancery court; that on the 27th of May, 1907, by an order of Hon. Jeremiah M. Wallace, judge of said chancery court, at chambers, the said Sunny Park Hotel. together with all the fixtures and personal property therein belonging, was leased for the summer season of 1907 to one Joseph Evins, all of which will appear by reference to a certified copy of the records of said chancery court hereto attached and marked 'Exhibit A'; that the defendant has no interest in and no title whatever in and to the said property described, all of which he is ready to verify."

To this answer is attached certain exhibits setting forth the orders of the chancery court of Yell county. They will be referred to later.

In the amendment to the second paragraph of the answer just quoted, the defendant says: That on August 27, 1906, one W. T. Dunbar instituted an action in the chancery court of Yell county, Ark., for the Dardanelle district, against Joseph Evins, Charles Grusendorff, Stella Grusendorff, his wife, and the said Dunbar, claiming therein to be the owner of the lots and parcels of land in controversy in this action, and prayed the court to cancel a certain contract theretofore en-

tered into between the plaintiff and the said Charles Grusendorff and Stella Grusendorff relative to said lands, and also for an injunction restraining said Evins from conveying said lands to the said Grusendorffs or any other person other than the plaintiff. That afterwards, to wit, on the 14th of September, 1906, the said Dunbar, by amendment, made J. P. Winchester, R. P. Howell, and W. D. Bell parties defendant thereto, and prayed for the appointment of a receiver to take charge of all the property described in said original complaint and in controversy in this action, and held the same subject to the further order of the court therein. That, in pursuance of the prayer of the said plaintiff, the chancellor of said district, on the 13th of September, 1906, appointed W. L. Tatum receiver of all said properties until the further order of the court. That said Tatum filed his bond and took the oath of office as such receiver and entered upon the discharge of his duties. That afterwards, on the 14th of September, 1906, an order was entered by said chancellor modifying said order appointing the receiver so as to limit the power of said receiver to the taking of an invoice of the property, goods, and chattels and choses in action belonging to the defendants or any of them until September, 1906, upon condition that defendants give a forthcoming bond in the sum of $1,000 to plaintiff. That defendant W. D. Bell was at that time in possession of said property, and in compliance with said order executed said bond and retained possession thereof. That afterwards, to wit, on the 19th of September, 1906, Charles and Stella Grusendorff and W. D. Bell filed their joint answer to said amended complaint, in which it was alleged, in substance, that said Bell had become the owner of all of said property by purchase from his codefendants, and the said Stella Grusendorff denied the title of said plaintiff to said property. That afterwards, to wit, on the 8th of January, 1907, the said plaintiff Dunbar filed a motion before said chancellor, at chambers, to dissolve said injunction and discharge said receiver, which said motion was granted, and said receiver discharged by said chancellor at chambers. That afterwards, to wit, on the 17th of January, 1907, the said defendant, W. D. Bell, filed in said cause his supplemental and amended answer to said cross-complaint, alleging, in substance, his ownership to said property in controversy. That during the pendency of said suit said Grusendorff had fraudently conveyed said property to Thomas B. Latham through the procurement of Jo Johnson, attorney for said W. T. Dunbar, and praying that said Thomas B. Latham and Jo Johnson and said Grusendorffs be made parties defendant to said cross-complaint and be enjoined from disposing of said property, and for other relief. That upon the filing of said supplemental answer to the cross-complaint, the said chancellor made an order therein directing process to be issued against the said Johnson and Latham, and ordering that they and the said Dunbar be enjoined from bringing any suit or action for said property, and from in any manner disturbing the possession of said W. D. Bell, his agents or lessees, and further ordering that the said lessee be reinstated as to both real and personal property. That on the 4th of February, 1907, the said chancellor made an order setting aside the order made on January 8, 1907, discharging said receiver and dissolving said injunc-

tion, and reinstated said injunction and restored said property to the possession of said receiver as the same was before making said order of January 8th. That afterwards Bell dismissed his cross-complaint without prejudice as to Latham. That afterwards, on the 19th of March, said Bell filed his amended and supplemental answer to the cross-complaint against his codefendant, Joseph Evins, the Grusendorffs, Jo Johnson, Latham, and William D. Waters, alleging that he was the owner of said property by purchase from Stella Grusendorff, and that said Grusendorff, pending said litigation, had fraudulently caused the same to be conveyed to Thomas B. Latham by said Evins, and said Latham had conveyed the same to said Waters in fraud of said Bell's right, and prayed a warning order against Grusendorff, Latham, and Waters, and summons to be issued against Evins and Johnson, and that all of said defendants be enjoined and restrained from further conveyances, incumbrances, and suits touching the title and possession of said property, or any of them, except the suit pending in this court which had been previously brought on the 8th of the same month, and that warning orders and summons were duly issued as prayed for. That on the 23d of March said court ordered said receiver to lease the hotel building situate upon the said property for the season of 1907, directing that the said Bell should remain in custody of said property under said receiver until the same was leased. That on the 28th of May, 1907, said property was leased to said Joseph Evins for the season of 1907 by said receiver, and that said Evins was then in possession thereof under a lease, and that the defendant Shinn, at the time this action was instituted, was holding said property as the agent of and under said receiver so appointed as aforesaid by said court. Copies of all the orders of the chancellor relating to the subject-matter of this answer are filed and made exhibits with the answer.

The amendment to the second paragraph of this answer is in the nature of a plea in abatement; the contention being that, inasmuch as this property is in the hands of the receiver of the chancery court of Yell county, the suit in ejectment in this court cannot be maintained. To this plea in abatement the plaintiff has filed a motion to strike for the following reasons: Because the same incumbers the record; because it is not in response to the order of the court requiring the defendant to file exhibits to his answer; because it tends to mislead the court in the construction and effect to be given said exhibits; and because it fails to show, or tends to show, that either of the parties, plaintiff or defendant in the alleged suit pending in Yell county chancery court for the Dardanelle district, have any title or muniments of title to the property in controversy.

The plaintiff also files exceptions to the exhibits: First, because the same, and each of the same, are incompetent and immaterial; second, because the same together do not set up a defense to plaintiff's right of action; third, because Exhibit F was an order made by the chancellor on his own motion and not at the request of either party and in violation of the joint request of both parties to the suit, and because the court had no power to lease the property at the September term, 1906, and no power to make an order reinstating it at the February

term, 1907; fourth, that plaintiff excepts to Exhibits H and I because they are incompetent and immaterial, having been made after the action in this court was brought; fifth, plaintiff excepts further to each and all of said exhibits, because, in paragraph 1 of defendant's answer, it is admitted that defendant Shinn was in possession of said property at the time of the filing of this action, that defendant's answer admits that Evins had title to all said property at the time he conveyed the same to plaintiff's grantor, that said answer and exhibits show that, if there is any suit pending in the Yell county chancery court for the Dardanelle district, it is an equitable suit, and if the parties thereto have any claim at all they have only an equitable claim, that if the receiver holds any of said property he holds having only an equitable claim, and if he is in possession of said property it is only an equitable possession, and therefore the exhibits are incompetent.

Plaintiff also filed a demurrer to the amendment of the second paragraph of defendant's answer. The grounds stated are as follows: First, because the amendment to the second paragraph does not state facts sufficient to constitute a defense; and he demurs to the second paragraph because the exhibits and original papers in the suit in the Yell county chancery court do not state facts sufficient to identify the property in controversy in that suit, it not being shown that the property was situate in Yell county, in the state of Arkansas, and that, especially as to block A of the Mt. Nebo Improvement Company's addition to the said town of Mt. Nebo, there is no description thereof in the chancery court suit in the Yell county chancery court.

I am of opinion that the motion to strike out the exceptions to the exhibits, and the demurrer, are all referable to a single point, i. e., what was the status of this property in the Yell county chancery court at the institution of the suit in this court? An answer to this question involves a careful examination of the record of the Yell county chancery court up to and including the 8th of March, 1907, when the present suit was brought in this court.

I have made a very careful examination of the pleadings and entries in the Yell chancery court up to and including the 8th of March, 1907, and it would be very difficult to find a record containing more irregularities. But in the consideration of that record the court is not to be governed by the precise facts as they appear in the record, but rather by what, under the liberal practice of amendment in this state, may be properly and rightfully brought into that record. Mere errors of description of property, errors that may have been committed by the chancellor, errors that may have crept into the pleadings, and all matters of that kind, which are the subject of amendment, are matters which are for the consideration of that court exclusively, and must be treated by this court as they would be treated if they were properly and timely presented to the chancellor of that court. For instance, it is stated in the demurrer that none of the property which was ordered in the hands of the receiver in that court, and which it appears from the record is under the control of the court now (whether rightfully or wrongfully, it is not necessary now to say), is not described in any of the pleadings as being situated in the county of Yell,

in the state of Arkansas. But that is the subject of amendment. Upon suggestion, no doubt the amendment would be made. The property was described so that the chancellor and the receiver knew what property was to be seized, and it seems it was seized (some of it), and was afterwards retained by the party in possession and a bond given under the direction of the chancellor. Surely it would not be contended for a moment that the chancellor would lose jurisdiction of the case because, by inadvertence of the counsel. it was neglected to state in what county the property was situate. Both of the parties knew what property was to be seized, under the direction of the court, by its receiver. All matters of that kind must be treated as if the pleadings were amended so as to show that the property was in the county in which it was really and in truth situate. In other words, it is not for this court to decide whether the property now in the hands of the chancery court of Yell county was regularly and rightfully seized, or not. That is a question exclusively for that court; and, a chancery record being under control of the chancellor until final decree, all irregularities of every description which intervene after the institution of the suit are subject to correction. The United States Court for the Eighth Circuit has so held.

Having said this much as to the manner in which the records of the Yell chancery court must be treated, I come to examine the exact status of the case at the time this suit was brought, to wit, on the 8th, of March, 1907. The suit in the Yell chancery court was brought by W. T. Dunbar against Joseph Evins, Charles Grusendorff, and Stella Grusendorff. The scope of the bill was to compel Charles and Stella Grusendorff to deliver all evidence of claim on and to the lots in controversy, and that said evidences be rescinded and canceled, and to compel the defendant Evins to execute title to the property to the plaintiff. This complaint, as stated, was filed on the 8th of March, 1907. It asked for neither injunction nor receiver. On the 13th of September before answer was filed, the plaintiff filed an amendment to his complaint, whereby the scope of the original bill was enlarged, and J. P. Winchester, Robert D. Howell, and W. D. Bell were made defendants and a receiver was asked for. On the same day the chancellor appointed W. L. Tatum receiver, with full power, and on the following day the said Tatum qualified by taking the oath of office. filing his bond, and on the same day the following order was entered:

"Now on this day, on motion of defendant to modify the order heretofore made on yesterday appointing the receiver in this case, it is ordered that the aforesaid order appointing the receiver herein is modified to limiting the powers of the receiver to taking an invoice of the property, goods, chattels, and choses in action belonging to the defendants or any of them until September 19, 1906, at which time notice is given that motion will be made before the Yell chancery court at Dardanelle to discharge said receiver. This order is granted upon condition that defendants give a forthcoming bond to plaintiff in the sum of $1,000 with surety to be approved by the clerk of said court, upon the approval whereof all proceedings under the aforesaid order appointing the receiver in this action is stayed until the further order of the Yell chancery court, or the chancellor thereof in vacation."

On the same day one of the defendants, W. D. Bell, and his sureties, entered into a bond as follows:

"We, W. D. Bell, as principal, and L. C. Hall, R. C. Bullock, and M. L. Davis, as sureties, do bind ourselves that the property mentioned in the order of the court appointing W. L. Tatum as receiver in the above-entitled cause, which property the said court ordered the said Tatum as receiver as aforesaid to take into his possession or so much thereof as was in the possession of W. D. Bell at the date of making said order and the seizure by the said receiver, shall be forthcoming before the chancery court and subject to its further orders herein at its adjourned term thereof to be held on the 19th of September, 1906; or that we will forfeit and pay the sum of $1,000 as ordered by the court. Otherwise this obligation shall be null and void."

Which bond was accepted and approved by the clerk.

On September 19th the Grusendorffs and W. D. Bell filed their separate answer to the plaintiff's complaint and amended complaint, in which they specifically denied practically all the allegations in the original and amended complaint, and conclude their answer by asking for the discharge of the receiver, the dissolution of the injunction, the dismissal of the bill, and that the title of the property in controversy be vested in the defendant W. D. Bell. On the 20th of September Winchester and Howell both filed their separate answer, the contents of which is unimportant so far as this question is concerned. On the 19th of September the defendants, the Grusendorffs, Bell, Evins, Winchester, and Howell moved the court to discharge the receiver, which motion was heard on pleadings, exhibits filed, and oral testimony of witnesses and argument of counsel, and the motion to dissolve was overruled, and the order of September 8th, modifying the order appointing the receiver, was continued in full force and effect until further ordered. It does not appear that any other steps were taken in reference to the order appointing the receiver, and the order modifying that order, until the 8th of January. On the 8th of January the plaintiff Dunbar presented a written motion to the chancellor of the Yell chancery court, in which he moved to dismiss his action as to the defendant Joseph Evins only, to dissolve the injunction granted on plaintiff's complaint, and to release the receiver. On that motion the chancellor entered an order as follows:

"At Chambers, Danville, Arkansas, January 8, 1907, on consideration of the within application, the injunction is dissolved, and the receiver is discharged as prayed, and this instrument is ordered to be filed with the papers in the case."

While the order last quoted purported to dissolve an injunction, it does not appear, up to that date, that any injunction had ever been granted. The receiver, however, was discharged on the 8th, but the chancellor made no order dismissing the suit as to Joseph Evins. On the 7th of January, 1907, the day before the injunction was dissolved and the receiver discharged as prayed, the defendant Joseph Evins conveyed the property in controversy to Thomas B. Latham, who was not at that time a party to the suit. On the 16th of January the defendant W. D. Bell filed a cross-complaint, in which it is charged that Jo Johnson had procured the Grusendorffs to convey the property in controversy to Thomas B. Latham, who, it is alleged, was represented by Jo Johnson, Dunbar's attorney, and a deed taken in Dunbar's interest. To that cross-complaint Jo Johnson, Thomas B. Latham, and the Grusendorffs were made parties defendant, and a tempo-

rary restraining order was made by the chancellor of the Yell chancery court enjoining the said Latham and Jo Johnson from executing any further conveyances or incumbrances upon the property involved, and that they be restrained from bringing any other suit or otherwise litigating the right or title to said property in any other court, and that the deeds made by Evins and the Grusendorffs to Latham be canceled.

On that complaint an order was made that Jo Johnson and Thomas B. Latham, and that Dunbar and Johnson and Latham, be restrained and enjoined from the sale, transfer by deed, or otherwise incumbering the property involved in the suit, and that they further be restrained and enjoined from bringing any suit or action or otherwise litigating the right of title to any of said property in any court, either in law or equity, other than the Yell county chancery court, and from in any manner disturbing the possession of the cross-complainant, W. D. Bell, his agents, tenants, or lessees. And it was further ordered by the court that the receivership herein be reinstated, and that the property, both real and personal, be and remain in statu quo, with all the liabilities and rights of possession and seizure as it was before the order made by the judge at chambers January 8, 1907, as fully as if no such order had been made. On February 4th the Yell chancery court entered an order setting aside the order of January 8, 1908, dismissing the injunction and discharging the receiver, and reinstated the injunction and restored the property to the possession of the receiver just as it was before the order of January 8, 1907, was made.

On the 6th day of February W. D. Bell filed an amendment to his separate answer, in which he prayed that his answer be treated as a cross-complaint, and that the property known as block A, together with the hotel fixtures, furniture, etc., quieted in him, and that the title and ownership of said property be vested in him, and that the said Evins be by the court required to order and execute and deliver to the cross-complainant, Bell, a deed conveying to him, as assignee of Stella Grusendorff, the property involved in said suit situate upon Mt. Nebo in Yell county, Ark., and for all costs and other proper relief. On February 7th W. D. Bell moved the court to dismiss as to Thomas B. Latham without prejudice, and the same was done, and Latham was ordered to go hence without day. By this order Latham ceased to be a defendant in the suit; but the injunction as to him still remained in force. On February 8, 1907, the plaintiff Dunbar filed his motion to docket and dismiss his case. At the same time he filed a motion to dismiss the case as to Jo Evins, both of which motions were overruled by the chancellor. On February 8, 1907, on the motion of the plaintiff Dunbar, the injunction granted on January 17, 1907, against Dunbar, Johnson, and Latham, enjoining them from the sale or transfer, by deed or otherwise incumbering the property involved in the suit and from bringing any suit or action in any other court, was dissolved.

Such was the record of the Yell chancery court on the day on which the plaintiff, Waters, brought his suit in this court against the defendant, Shinn. An analysis of these orders discloses this state of facts: The suit in the Yell county chancery court was brought

against Evins and the Grusendorffs. All of the parties remained parties defendant up to the institution of the suit by Waters against Shinn in this court. On the 7th of January, when Evins made his deed to Latham, the receiver had not been discharged; but the order modifying the order appointing the receiver was in full force and effect, and Latham took his deed from Evins pendente lite. It also appears that on February 11, 1907, when Latham made a deed to the plaintiff, Waters, Latham himself was not a party to the suit, and the injunction, as heretofore stated, as against him, had been dissolved. It also appears that the object of the bill filed by the plaintiff Dunbar in that court was to compel Joseph Evins to vest title to the property in controversy in him; and the cross-bill on the part of Bell was to compel the said Evins and the Grusendorffs to vest the title in him. A court of equity, therefore, had jurisdiction of the person of Evins, had acquired jurisdiction of the property by the appointment of a receiver, and was proceeding to determine the questions involved in the bill and cross-bill at the time the suit in controversy was instituted. The record is not clear as to whether the order modifying the order appointing the receiver applied to anything except the personal property involved in that suit. The record shows that, under the order modifying the order appointing the receiver, the receiver made an inventory of personal property, but made no inventory of the real estate. It appears in the subsequent proceedings of the court that the receiver, however, had leased the property, and that, at the time of the institution of this suit against him, the latter was simply the agent of the receiver, claiming no title or interest whatever in the property.

It may be well to remark at this juncture that it is not the province of this court to review the action of the chancery court of Yell county or declare null and void, or inoperative, any order or orders or other steps that may have been taken by that court or by the chancellor thereof. That record is exclusively under his control, and the court in dealing with it must assume that whatever errors, if any may have been made by him, will be corrected by him in the final disposition of the case, and, if not, such steps will be taken as that his action will be reviewed by a higher court, and all errors properly corrected. Nor is it any part of the duty of this court, in determining the exceptions, the motion, and the demurrer, to determine whether or not the pleadings and answer set up by defendant, Shinn, are sufficient in law, if true, to defeat a recovery in the present action. The duty of the court now is to determine whether or not the answer and plea in abatement set up such a defense as shown that the property in controversy was, when this suit was brought, and is now, under the control and guidance of the chancery court of Yell county. If it is, this case was improperly brought; if it is not, this case should proceed to final hearing. This is so, because if the plaintiff, Waters, has the right in law to prosecute his ejectment suit against the agent of the receiver of a state court in possession of real estate to a final judgment, he is likewise entitled to the proceeds of this court to execute that judgment.

The execution of a judgment for the recovery of real estate involves the issuance of the writ of possession which would command the mar-

shal to seize the property in the possession of the agent of the receiver of the Yell chancery court and to put the plaintiff in possession thereof. This is precisely what the courts have held cannot be legally done, because it involves a conflict of authority between state and federal courts. Riggs v. Johnson County, 6 Wall. 166, 18 L. Ed. 768, approved in Rio Grande Railroad Co. v. Gomila, 132 U. S. 483, 10 Sup. Ct. 155, 33 L. Ed. 400. The court held in those cases that the jurisdiction of the court is not exhausted by the rendition of a judgment, but continues until that judgment is satisfied; that process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, observing that the judicial power would otherwise be incomplete and entirely inadequate to the purposes for which it is conferred by the Constitution. Perhaps no more interesting or instructive case can be found than that of In re Tyler, 149 U. S. 164, 13 Sup. Ct. 785, 37 L. Ed. 689. This case was argued by eminent counsel, and involved great constitutional questions, as well as rules applicable to conflicts of jurisdiction between state and federal courts, and was decided by an undivided court; the opinion being written by Mr. Chief Justice Fuller, many cases, state and federal, being cited, and the whole doctrine being carefully gone over.

But the contention in this case is that when the court entered the order of September 14th, modifying the order appointing the receiver, and permitting defendant Bell to give bond for the property, conditioned that he would have it forthwith on a subsequent day named in the order, and limiting the receiver in his duties to taking an inventory of the property, that the order referred to released the property, and it was subject to seizure; in short, that it was no longer in custodia legis, and was subject to suit by any one in the hands of whomsoever it might be found. The answer to that is that the receiver was not discharged; he was still the arm of the court with certain duties to perform with regard to the property. He was subsequently discharged, and still later reinstated, with the rights, duties, and powers specified in the order modifying his powers under the original appointment, and so remained in office until this suit was brought. All the orders are somewhat indefinite, and it is difficult to see precisely what the chancellor intended; but it is manifest that he did not intend to surrender control of the property, and a fair and liberal construction of the record does not justify that conclusion.

Authorities are cited as to the effect of taking a forthcoming bond; but the bond is not a statutory bond, nor a forthcoming bond, within the meaning of that term. It was a common-law bond, and obviously, I think, applied to the personal property in possession by the defendant Bell. The effect, I think, was to leave the receiver in possession, without power to disturb such property as Bell had in possession, except to take an inventory. Assume, therefore, that the receiver, although in office, did not take actual possession of the realty, and did not have such possession on at the time suit was brought, what was the legal status of the property? Could any other court seize it as it then stood? The question is not without difficulty, and there are some differences of opinion disclosed in the adjudged cases; but it seems to be fairly well-settled in the federal courts. But before

discussing that question it is perhaps well enough to consider, briefly, the nature and office of the receivership in this case. The defendant is simply the agent of the receiver, who was only the arm of the court. Neither the agent, the receiver of the court, nor the court had any interest in the property. If in the possession of the receiver, it was for its protection in the interest of the one whom the court should finally determine to be entitled to it.

In Booth v. Clark, 17 How. 330 (15 L. Ed. 164) the Supreme Court said:

"He (meaning the receiver) is a representative of the court, and may by its direction take into possession every kind of property which may be taken in execution, and also that which is equitable if of a nature to be reduced into possession. But it is not considered in every case that the right to the possession is transferred by his appointment, for where the property is real, and there are tenants, the court is virtually the landlord, though the tenants may be compelled to attorn to the receiver."

In that event the court has not lost any control of the property, because it is left in actual possession of the tenant. The receiver, who represents the court, will see that the tenant attorns to the court, who is the tenant's landlord, and whatever is received will be held for the rightful claimant, as it may appear.

The case of Wiswall v. Sampson, 14 How. 60, 14 L. Ed. 322, was a contest between the purchasers at execution sale made by certain judgment creditors and the purchaser of the same property under a sale through a receiver appointed by a chancery court. The bill in chancery was filed in the United States Circuit Court for the Southern District of Alabama February 7, 1843, and prayed for an injunction and a receiver. Both were refused. An appeal was had, and the case was reversed and remanded to the Circuit Court for further proceedings. On the 15th of April, 1845, the chancellor made a final decree and referred the case to a master. He also made an order appointing a receiver and directed a sale of the property. The receiver was actually appointed June 27, 1845, and on the same day the party in possession attorned to him. Meantime executions on two judgments in state courts of a date prior to filing the bill in chancery in the United States Circuit Court were issued, and execution liens acquired on the property by levy while it was in the hands of the receiver, in the manner stated. The property was sold under the said execution and afterwards sold by the receiver of the United States Circuit Court under the decree of that court. The court said:

"The receiver was appointed on the 27th of June, 1845, and on the same day Ticknor, who was in possession of the premises, attorned to him, who held possession until the sale was made in pursuance of the decree. It will be recollected that the execution on the judgment in favor of Crouch & Sneed was issued and levied on the 24th of February, 1845; and on that in favor of Fowler & Co. April 7th of the same year; and that the sale took place under which the lessors of the plaintiff claim, July 7, 1845.

"At the time, therefore, of this sale, the receiver was in the possession of the premises, under the decree of the court of chancery; in other words, the possession and custody of them were in the court of chancery itself (as the court is deemed the landlord), to abide the final decree to be thereafter rendered in the suit pending. * * * When a receiver has been appointed, his possession is that of the court, and any attempt to disturb it, without the

leave of the court first obtained, will be a contempt on the part of the person making it. This was held in Angel v. Smith, 9 Ves. 335, both with respect to receivers and sequestrators. When, therefore, a party is prejudiced by having a receiver put in his way, the course has either been to give him leave to bring an ejectment, or to permit him to be examined pro interesse suo. 1 Jac. & W. 176; Brooks v. Greathed, 3 Dan. Pr. 1984. And the doctrine that a receiver is not to be disturbed extends even to cases in which he has been appointed expressly, without prejudice to the rights of persons having prior legal or equitable interests. And the individuals having such prior interests must, if they desire to avail themselves of them, apply to the court either for liberty to bring ejectment, or be examined pro interesse suo; and this, though their right to the possession is clear. [Bryan v. Cormick] 1 Cox, 422; [Anonymous], 6 Ves. 287."

The court then proceeds to point out the remedies the parties having claims to or who are interested in the property in the hands of a receiver have, and then says:

"The settled rule, also, appears to be that where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court pending the litigation, by the appointment of a receiver, or by sequestration, the title is bound from the filing of the bill; and any purchaser, pendente lite, even for a valuable consideration, comes in at his peril [Crofts v. Oldfield] 3 Swanst. 278, note; 2 Dan. Pr. 1267; [Anonymous] 6 Ves. 287; [Angel v. Smith] 9 Ves. 336; [Brooks v. Greathed] 1 Jac. & W. 178; 3 Dan. Pr. 1984.

"It has been argued that a sale of the premises on execution and purchase occasioned no interference with the possession of the receiver, and hence no contempt of the authority of the court, and that the sale therefore, in such a case, should be upheld. But, conceding the proceedings did not disturb the possession of the receiver, the argument does not meet the objection. The property is a fund in court, to abide the event of the litigation, and to be applied to the payment of the judgment creditor, who has filed his bill to remove impediments in the way of his execution. If he has succeeded in establishing his right to the application of any portion of the fund, it is the duty of the court to see that such application is made. And, in order to effect this, the court must administer it independently of any rights acquired by third persons, pending the litigation. Otherwise, the whole fund may have passed out of its hands before the final decree, and the litigation become fruitless."

And still later adds:

"As we have already said, it is sufficient for the disposition of this case to hold that while the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place either on execution or otherwise, without the leave of the court for that purpose. And upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser.

"We are also inclined to think that the question of title to the property under the marshal's sale is concluded between these parties by the judgment of the court in the proceedings on the petition by the purchaser for the removal of the receiver, and to be let into the possession. This, we have seen, is the appropriate remedy on behalf of a person claiming a paramount legal right to an estate which has been brought into the possession and safe-keeping of a court of chancery, pending the litigation in respect to it."

The court may well stop here; but I revert to the contention of the plaintiff, i. e., that the court lost possession of the property when it modified its order appointing the receiver and received a forthcoming bond.

In Adams v. Mercantile Trust Co., 66 Fed. 617, 15 C. C. A. 1, the case was substantially this. In 1893 one Broughton filed a bill in a

state court in Florida against the Jacksonville, Mayport & Pable Railway & Navigation Company, to which the Mercantile Trust Company, trustee of a mortgage upon the railroad, was made a party, in which he claimed a first lien upon the property of the railway company, alleging its insolvency, and the existence of numerous other liens on its property, and sought the appointment of a receiver and the sale of the road for the payment of the liens. On November 17, 1893, a decree pro confesso was taken against the trust company, and on March 6, 1894, after hearing on the answer of the railway company, the state court made a decree granting the prayer of the bill, and sending the case to a master to take account of the indebtedness. Subsequently on March 19, 1894, the said Mercantile Trust Company filed its bill in the federal court for foreclosure of its mortgage on the same railway company, and on the same day, on consent of the railway company, a receiver of its property was appointed by the federal court, which took actual possession of the road. April 5th, following, the state court appointed a receiver of the railroad in the suit originally brought by Broughton. On the 21st of May the receiver appointed by the state court filed his intervening petition in the federal court, seeking delivery to him as receiver in Broughton's suit of the property then in the hands of the receiver of the federal court. The question, therefore, was clearly brought before the federal court as to whether its receiver should surrender the property to the state court, or retain it and administer it himself. By the unanimous opinion of the Circuit Court of Appeals of the Fifth Circuit, it was held that the property should be surrendered to the state court, although the federal court had first acquired actual possession of it. Judge Pardee used this language:

"The suit instituted by Broughton in the state court against the Jacksonville, Mayport & Pable Railway & Navigation Company brought under the direct control of the court all the property of said railway company, to be administered for all entitled to share the fruits of the litigation. The possession and control of the railroad were absolutely necessary to the exercise of the jurisdiction of the court. The filing of the bill, and the service of process thereunder, was an equitable levy upon the property. Miller v. Sherry, 2 Wall. 237 [17 L. Ed. 827]; Railroad Company v. Pettus, 113 U. S. 116–124, 5 Sup. Ct. 387 [28 L. Ed. 915]. Pending the proceedings in that court under the said bill, the said railroad and property may be said to be in gremio legis. Union Trust Company v. Rockford, R. I. & St. L. R. Co., 6 Biss. 197, Fed. Cas. No. 14,401; Railroad Company v. Gomila, 132 U. S. 478, 10 Sup. Ct. 155 [33 L. Ed. 400]. The Mercantile Trust Company was made a party to the suit, and, so far as the record goes, is bound by the proceedings had therein."

Prior to that decision Mr. Justice Bradley, in the case of Wilmer v. Railway Company, 2 Woods, 409, 427, Fed. Cas. No. 17,775, had held to a contrary doctrine. The Court of Appeals of the Fifth Circuit declined to follow the decision of Mr. Justice Bradley and distinctly approved the decision of Mr. Justice Woods, whose opinion is supported by a large number of authorities, state and federal, cited in the opinion to which I have referred. In conclusion, Judge Pardee said:

"The views expressed by Judge Woods have been accepted and followed, in this circuit, at least and we fully concur therein, as a correct exposition of the law, and one particularly applicable to the present case; while the deci-

sion of Mr. Justice Bradley, doubted by himself, is open to the objection that thereby jurisdiction is frequently made to depend upon a race between marshals and sheriffs, likely to result in unseemly controversies between the state and federal courts. Considering the present case, however, as one in which neither the appointment nor the ousting of a receiver of any court is involved, but as presenting a question of comity between state and federal courts, we are of opinion that the court below erred in not granting the application of the receiver of the state court for the possession of the property which is so clearly necessary for the further exercise of that court's jurisdiction, and to which possession we think it so clearly entitled. The decree appealed from is reversed, and the cause remanded to the court below, with directions to enter an order and decree in favor of the intervener, restoring to his possession and to the possession of the state court the property of the Jacksonville, Mayport & Pable Railway & Navigation Company."

This case is important, in this, that it distinctly holds that the filing of a suit in equity, the nature and character of which involved the direct control of the property in controversy, is an equitable levy upon the property, and that pending the proceeding in such court under the bill, as stated, the property may properly be said to be in gremio legis, or under the guidance of the law, and Mr. Justice Woods in his opinion in the same court said:

."The commencement of the action, the service of process, the, according to some of the cases, simple commencement of the suit by the filing of the bill, is sufficient to give the court jurisdiction to the exclusion of all other courts."

In the case of Appleton Waterworks Company et al. v. Central Trust Company of New York, 93 Fed. 286, 35 C. C. A. 302, the same doctrine is approved. In this case the court says:

"I am of opinion that the true inquiry is one of actual cognizance by the court, and that the entry of an order upon the filing of the bill for any purpose involved in the action, and especially one tending to possession by the court of the res, is sufficient for jurisdiction to attach without waiting an actual service of parties, and that the orders entered on July 16, 1898, accomplished that purpose in this case, without regard to the effect of the attempted service of July 18th, which appears to have given actual notice of the proceedings and orders to the interested parties, and probably induced the counter proceedings in the state court. * * * This bill, as filed, states a case for receivership as necessary incident to the foreclosure, that the franchises and property are imperiled in the hands of the mortgagee, and that it is essential to the complainant's relief to preserve the rents and profits as well as the mortgaged property; and to that end there must be possession by the court of the res."

The case at bar falls clearly within the two last decisions from which I have quoted. The chancery court of Yell county, Ark., at the institution of this suit, was in control of the property in controversy through its receiver. The nature and character of the case was such as to make it necessary that the property should be protected, either by a receiver or an injunction.

It is no part of the duty of this court to say whether the Yell chancery court has applied the right remedies or not. It has jurisdiction of the property, and it cannot be lawfully disturbed by any other court, either state or federal, so long as it remains under the control and guidance of that court. If errors have crept into its record, they are subject to correction by that court, and, in the event of its failure to do so, the right of appeal to the Supreme Court may be invoked

by either party to that end. It is not a question here as to whether, if the case at bar were brought to trial, Shinn, the defendant, could show a title in himself; indeed, it is not a question as to whether any title could be shown in the receiver, or in any one or other of the parties to the suit in the Yell chancery court. The bar to this suit is found in the fact that the property is shown by the record and by the plea in abatement to be under the control and custody of the Yell chancery court. To that court all parties must go for the assertion of any rights they may have legally or equitably to the property in controversy so long as it remains in the custody of that court.

The motion to strike the exceptions and the demurrer will be overruled.