### In re EASTLACK.

(District Court, D. New Jersey. April 6, 1906.)

1. BANKRUPTCY—ELECTION OF TRUSTEE—SETTING ASIDE.
    The right to elect a trustee for a bankrupt being given to the creditors by Bankr. Act July 1, 1898, c. 541, § 44, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438], their election should be permitted to stand, unless it clearly appears that in conducting it some principle of law intended to secure the administration of the bankrupt's estate in the interest of his creditors has been violated.

2. SAME—INFLUENCE OF BANKRUPT IN SELECTION OF TRUSTEE.
    A debtor stated at a meeting of his creditors that he intended to file a petition in bankruptcy as the best way of liquidating, and that if a person whom he desired could be elected trustee he thought his estate would pay in full and leave a surplus for himself, and he asked his creditors present to support such person, to which they agreed. After his petition had been filed, a movement having been made by certain creditors to elect a different trustee, and letters having been sent out to creditors in that behalf, a letter was prepared by the bankrupt's attorney which was signed and sent out by a large creditor advocating the election of the bankrupt's candidate. At the creditors' meeting a very large majority of the creditors both in number and in amount of claims voted for such person; so far as appeared without further solicitation on

the part of the bankrupt or his attorney, about half of them in number, and three-fourths in amount of claims, being present and voting in person. *Held*, that the facts stated did not justify the referee or court in refusing to approve the election, in the absence of anything showing that it would be detrimental to the interest of any creditor.

In Bankruptcy. On petition to review order of referee.

French & Richards and W. T. Read, for petitioners.
Wilson, Carr & Stackhouse, for respondents.

LANNING, District Judge. At the first meeting of the creditors of the bankrupt, 32 creditors, holding claims aggregating the sum of $19,136.41, voted in person for Dr. Harry H. Grace as trustee. Atmore & Sons, creditors to the amount of $160.90, by their attorney W. T. Read, and Barber & Perkins, creditors to the amount of $674.72, by their attorney J. E. Borton, and 32 other creditors, whose claims aggregated $4,135.45, by their attorney W. E. French, voted for the same trustee. The total number of creditors voting for Dr. Grace was 66, and the total amount of the claims held by these creditors was $24,107.48. Twenty-four other creditors owning claims to the amount of $2,851.71, by their attorney H. F. Carr, voted for John C. Danenhower as trustee. As the creditors who voted in person did so, they left the referee's office. After they had left, and no one remained in the office except the referee and the attorneys above mentioned, Mr. Carr, as the representative of the creditors whose proxies he held, objected to the approval by the referee of the election of Dr. Grace, on the ground that his election had been brought about wholly by the efforts of the bankrupt and his attorneys. No proofs were taken on this point, but Mr. Carr made a statement, the substance of which the bankrupt's attorney admitted to be true. The referee's certificate concerning this statement is as follows:

"That Mr. Carr stated in the presence and hearing of all of the attorneys above named that he (Carr) was present at a meeting of the creditors of the said Eastlack, held January 6, 1906, at the office of J. Willard Morgan, 207 Market Street, Camden, New Jersey. That the meeting was called by William Early, as one of the attorneys for the said Eastlack; that at the said meeting the said Eastlack was represented both by the said William Early and by J. Willard Morgan. That a statement was submitted purporting to show the assets and liabilities of the said Eastlack, and that such statement purported to show an excess of assets over liabilities of about $23,000. That, in response to an inquiry of one of the creditors as to what Eastlack desired to do in the premises, the said Eastlack stated to the creditors present, who were about 65 or 70 in number, that he had determined to file a voluntary petition in bankruptcy, that it had been determined that this was the most feasible means of liquidating the estate of the said Eastlack. That the said Eastlack then personally stated that he had but one favor to ask of his creditors, and that was that he be permitted to name the prospective trustee in bankruptcy; that he desired some one who would work in harmony with him in winding up the estate; and that he believed that, if this were done, there would be some part of the estate coming to him after the creditors had been paid. In response to an inquiry of a creditor as to the name of the person suggested, Mr. Eastlack said that his name was Dr. H. H. Grace, of Camden, N. J. That Dr. Grace was thereupon named by one of the creditors, and that the creditors then present voted for Dr. Grace as trustee, and a number of the creditors were asked to sign, and did sign, a paper for the purpose of signifying such intention.

"Mr. Carr further stated that he had in his possession a letter, of which the following is a copy:

"'Phila., Pa., Jan. 15, 1906.

"'Dear Sir: As you may already know, we are one of the creditors of Mr. J. E. Eastlack, who has just filed his petition in bankruptcy; his indebtedness to us amounting to over $5,100. A meeting of his creditors was held on the 6th inst., which was largely attended and at which time Mr. Eastlack made a very clean and impressive statement of his affairs and expressed his belief that if he were permitted to nominate the trustee in bankruptcy whom he could assist in perfect harmony, that he believed he could pay dollar for dollar to his creditors. His nominee is Henry H. Grace of Camden, and all his creditors seemed to be thoroughly satisfied with this selection. It is understood that an effort is being made to oppose the selection of Henry H. Grace by controlling the votes of a number of small creditors. To this end, we are informed certain attorneys have sent out a letter stating that the majority of unsecured creditors are opposed to Mr. Grace. Such a statement we believe to be without foundation, and only written for the purpose of controlling the trusteeship and the fees incidental thereto. Certainly the meeting of the 6th inst. was made up almost exclusively of unsecured creditors, and not a dissenting voice was heard from any of these. The largest creditors are strongly in favor of H. H. Grace for trustee.

"'Who the nominee of the opposing attorneys might be we are not aware, but the gentleman named by Mr. Eastlack is one who stands highly in the city, whose integrity is beyond question, who is a personal friend of Mr. Eastlack, and has absolutely no other end in view except to pay the creditors in full and to leave something to the credit of the bankrupt. In fact, we understand that he expects to ask no compensation for his service. We are strongly impressed that the selection of Mr. Grace as trustee will be of the greatest advantage to all concerned, but the only way you can participate in his selection is by filing your claim at the next meeting of the creditors, of which notice will be given you, and being represented personally by some attorney instructed by you to vote for Mr. Grace. If your claim is prepared in legal form, you are entitled to vote without an attorney. If your claim is already in the hands of an attorney, will you not kindly instruct him to vote for Mr. Grace and notify us that you have done so? If you have no attorney, we can recommend to you Thomas E. French, of 106 Market Street, Camden, whom we have named because of his long practice and high standing in that city, and who will vote your claim for Henry H. Grace.

"'Yours very respectfully, W. F. Drennan, 37 So. Water St.'

"Mr. Carr stated that he was credibly informed, and believed it to be true, that exact copies of the said letter had been forwarded to all of the unsecured creditors of the said bankrupt, and that he (Carr) was likewise informed, and believed it to be true, that the said letter had been drafted by one of the attorneys for the bankrupt. Mr. Carr then offered to substantiate all of these statements by sworn testimony, if the referee and attorneys present so desired. In response to this Mr. Early stated that the statements made by Mr. Carr as to what occurred at the said meeting of the creditors, held January 6, 1906, were substantially true. Mr. Carr then inquired of Mr. Early whether the said Mr. Early was willing to answer such questions as Mr. Carr should propound with reference to the letter dated January 15, 1906. Mr. Early signified his willingness so to do. Thereupon Mr. Early stated in response to the questions of Mr. Carr that he drafted the letter dated January 15, 1906, and that the said Mr. Early was responsible for the statement that, if the claims of the unsecured creditors were sent to Mr. French, Mr. French would vote the said claims for the said Henry H. Grace. That the letter was signed by Mr. Drennan at his Philadelphia office and forwarded by him from there to substantially all the creditors, and that the letter was written to offset a letter sent out to creditors. The referee thereupon inquired whether the parties present required actual proof to be produced of the facts above stated. The attorneys present made no objection to the referee determining the question of the approval of the election of Dr. Grace upon the statements of fact made by counsel, and did

not require formal proofs thereof to be made, and argued the question fully upon its merits without objection to the form of proof. All of the creditors who voted in person left the meeting as they voted and were not present at the time Mr. Carr made the objection nor at the argument."

After hearing argument, the referee made the order now under review, bearing date February 2, 1906, whereby he disapproved the election of Dr. Grace as trustee and continued the meeting of the creditors to a future day for a new election. The question now to be decided is whether the referee erred in making the order.

The bankruptcy act of 1867 contained a provision that:

"All elections or appointments of assignees shall be subject to the approval of the judge, and when, in his judgment, it is for any cause needful or expedient, he may appoint additional assignees or order a new election." See Rev. St. § 5034.

Controlled by the rule thus established by Congress, the election of a trustee by two creditors, brought to the register's office by the solicitor of the bankrupt, was set aside in the Bliss Case, reported in Fed. Cas. No. 1543. The court said:

"It is certainly against the policy of the act that a bankrupt should select his assignee, as, by electing a fraudulent person or a person disposed to favor him, the rights of the creditors might suffer. It is true that, if the creditors do not care sufficiently for the matter to attend the meeting, they ought not to complain. But still the law is no less brought into contempt. A fraudulent discharge of a debtor, or the discharge of a debtor who does not surrender all his assets, is precisely what those charged with the execution of the law are bound to guard against. If the court could be advised that in any particular case the bankrupt had brought in one or more of his friends, although bona fide creditors, and had by them chosen an assignee who was also his friend and in his interest, it is clear that the court would withhold its approval."

And in the Wetmore Case, Fed. Cas. No. 17,466, the assignee chosen by the creditors of the bankrupts had been for several years the bookkeeper of one of the bankrupts. This one of the bankrupts and his attorney attended the meeting of the creditors and voted under powers of attorney received from some of the creditors.

The court set aside the election, saying:

"While the choice of an assignee is vested by law in a majority in number and amount of the creditors, it is subject, nevertheless, to the approval of the district judge—a provision which implies a discretionary power to disapprove a choice so made. While the judge ought not arbitrarily, capriciously, or from dislike or partiality, to overrule the decision of the creditors, he is bound to see that the rights of the minority are properly protected, and to refuse confirmation, where he has good reason to suspect the assignee had been chosen in the interests of the bankrupts."

The present bankruptcy act contains no provision like the one above quoted from the act of 1867, but the Supreme Court has promulgated an order (General Order 13 [32 C. C. A. xvii, 89 Fed. vii]) reading as follows:

"The appointment of a trustee by the creditors shall be subject to be approved or disapproved by the referee or by the judge; and he shall be removable by the judge only."

It is evident that the Supreme Court intended by this order to establish a rule concerning the approval or disapproval of elections by creditors similar to that which existed under the act of 1867. The

decisions under the present law on this point show that such has been the understanding of our federal courts.

In Falter v. Reinhard (D. C.) 104 Fed. 292, the votes of certain creditors were challenged on the ground that the letters of attorney to the person representing them had been procured through the influence and efforts of the bankrupts for the purpose of controlling the election of the trustee. After hearing the evidence in the matter, the referee sustained the challenge. The opinion in that case shows that a plan for the election of the bankrupts' candidate was conceived and carried out in the bankrupts' place of business, and that the bankrupts themselves had by preparing the proofs of claims for creditors without expense to them, and by the solicitation of creditors at their place of business to give their proxies to one of the bankrupt's clerks, attempted to direct and control the proceedings looking to the election of a trustee. The referee disapproved this action, and, on petition for review, the court affirmed the order of the referee. This decision was affirmed by the Circuit Court of Appeals. 106 Fed. 57, 45 C. C. A. 218.

In the Rekersdres Case (D. C.) 108 Fed. 206, an attorney representing the bankrupt and her regularly appointed attorney, who also held letters of attorney from three creditors, nominated a certain person for the trusteeship of the bankrupt. Objection being made in behalf of another creditor to the nomination, the referee sustained the objection because the business association of the proposed trustee with the regularly appointed attorney of the bankrupt raised a presumption that the person nominated for trustee was nominated in fact by the bankrupt or her attorney, and was therefore not a suitable person to act in the interest of creditors. The District Court approved the referee's action.

In the Henschel Case, 6 Am. Bankr. R. 25, upon the election of a trustee, it was objected that the attorney by whose vote the trustee was elected held proxies obtained from creditors who were acting in combination with the bankrupt, and that the trustee was in fact the choice of the bankrupt and had announced in advance that, if elected, he would not prosecute certain actions which some of the creditors thought should be prosecuted. On a trial of the merits of the objection, the attorney refused to answer certain relevant questions, and this fact, together with the fact that a large number of the claims represented by the attorney were proven, and that the letters of attorney to him were executed before adjudication in bankruptcy, led to the disapproval of the election of the trustee.

In the Dayville Woolen Company's Case (D. C.) 114 Fed. 674, the attorney of certain creditors was asked whether any of the claims intended to be voted by him had been assigned to any person or corporation in the interest of the bankrupt. He refused to answer the question. Notwithstanding this refusal, and the fact that he had acted as counsel for the bankrupt during the proceedings in insolvency, the referee permitted him to vote and approved the election. On these facts the court set aside the order of approval made by the referee.

In the Blue Ridge Packing Company's Case (D. C.) 125 Fed. 620, there were objections that the trustee elected by the creditors had

previously advised the assignment for the benefit of creditors under the state law, which was the act of bankruptcy complained of, he being also the assignee, and that he was intimately associated with the attorney of certain stockholders of the bankrupt corporation who claimed also to be creditors. But the court held that these mere facts did not make the election an improper one, but called only for a close scrutiny of it. In passing on the point, the court said:

"It is to be remembered in all such cases that the choice of a trustee is lodged by the law with the creditors constituting a majority in number and amount, and that their selection is not to be interfered with, unless it clearly imperils the fair and efficient administration of the estate."

In the Machin Case (D. C.) 128 Fed. 316, it was held that votes of creditors for a trustee could not be rejected, on the mere ground that the candidate voted for had formerly been the attorney of the bankrupts.

In the Gordon Supply & Manufacturing Company's Case (D. C.) 129 Fed. 622, the trustee elected was not only a stockholder in the bankrupt corporation, but had been associated closely as attorney and legal adviser with those who had theretofore been in control of the corporation. Inasmuch as their management appeared not only to be the subject of criticism, but might call for action on the part of the trustee to hold them personally responsible, it was held that the election could not be approved.

In the Cooper Case, 14 Am. Bankr. R. 320, 135 Fed. 196, it was held that the attorney who had been employed by the bankrupt to file his petition, and whose obligation as attorney ceased at that point, and who had received no fee therefor, was not disqualified from voting on claims afterwards received from creditors without his own solicitation or the procurement of the bankrupt.

These cases establish the rule that the election of a trustee by the creditors is not to be disapproved, unless there is good reason for believing that the election has been directed, managed, or controlled by the bankrupt or his attorney or by some influence opposed to the creditors' interests. The proofs in this case show that at a large meeting of the creditors of Mr. Eastlack, called by him before he filed his petition in bankruptcy, he told them of his intention to file such petition, and of his belief that his assets, if wisely disposed of, would exceed his liabilities, and then expressed the hope that he might be accorded the privilege of naming his trustee. On being asked whom he would suggest, he named Dr. Grace, who was thereupon nominated by one of the creditors and to whom no objection was made. After he had filed his petition, his attorney, learning that some of the creditors were endeavoring to secure the election of another person as trustee, prepared a draft of the letter set forth in the referee's certificate. This letter was sent, it is true, "to substantially all the creditors," but not by the bankrupt or his attorney, but by and over the name of one of the creditors. The letter speaks, indeed, of Dr. Grace as the bankrupt's nominee. But neither the bankrupt nor his attorney attempted directly to control or influence the election. All that the bankrupt did, to which any objection is made, was to say in a public meeting of his creditors, and not privately to a limited

number of friendly creditors, that he would like to have Dr. Grace as his trustee. And all that his attorney did was to prepare a draft of a letter which one of the creditors—a large creditor, having a claim exceeding $5,100—sent to the other creditors recommending the election of Dr. Grace.

Section 44, Bankr. Act July 1, 1898, c. 541, 30 Stat. 557 [U. S. Comp. St. 1901, p. 3438] gives to the creditors the right to elect a trustee, and their election should be permitted to stand, unless it clearly appears that in conducting it some principle of law intended to secure the administration of the bankrupt's estate in the interest of the bankrupt's creditors has been violated. In this case 32 creditors, holding claims to the amount of $19,136.41, being a majority in number and amount, voted in person for Dr. Grace. There is no evidence whatever tending to show that any one of these persons was influenced in his vote either by the bankrupt or his attorney. It is true. that, as the letter set forth in the referee's certificate was sent "to substantially all the creditors," some, and possibly all, of these 32 creditors received copies of it. But not one of them was called as a witness on the question as to whether he was influenced by it. For aught that appears in the case, they may have made inquiry concerning Dr. Grace and, independently of the letter they received, have satisfied themselves that he was the best available man for the trusteeship. The situation was altogether different from what it would have been had these 32 creditors, or any considerable portion of them, been brought to the referee's office by the bankrupt or his attorney. In fact, the case is utterly barren of any evidence tending to show that any one of the creditors who voted for Dr. Grace represented any interests other than his own. If the creditors had confidence in Dr. Grace's integrity and in his ability and determination to administer the trust in their interest, the fact that he was acceptable to the bankrupt would very naturally lead to his election. Harmony of action between an honest bankrupt and an honest trustee tends to promote creditors' interests, and there is no law against the election of a person as trustee merely because he is acceptable to the bankrupt.

I think the proofs are not sufficient to lead to a disapproval of the action of a majority in number and amount of the creditors, and that the order of the referee should be set aside and the election approved.