### In re SYRACUSE PAPER & PULP CO.

(District Court, N. D. New York.   October 5, 1908.)

1. BANKRUPTCY—ELECTION OF TRUSTEE—OBJECTIONS TO CLAIMS OF CREDITORS.
   Where, at the first meeting of the creditors of a bankrupt, there was a contest over the election of trustee, oral unverified objections then made by the attorneys for one party to practically all of the duly proved claims of the other party, in support of which no proof was presented or offered, were not sufficient to require the referee to adjourn the meeting until such objections could be tried before proceeding with the election, and he properly overruled the objections.

2. SAME—RIGHT TO VOTE—STOCKHOLDERS AND EMPLOYÉS OF BANKRUPT CORPORATION.
   That a creditor of a bankrupt corporation is a stockholder or director of the corporation, or was an employé, does not deprive him of the right to participate in the election of a trustee.

3. SAME—TRUSTEE—COMPETENCY.
   Where three trustees are elected for a bankrupt corporation, it is no ground of objection that one of them is a director of the corporation; and, in case it becomes the duty of the trustees to bring an action against the directors, such action may be brought by the other two, making their co-trustee a defendant as director.

In Bankruptcy. Hearing on petition of review of order of C. L. Stone, referee in bankruptcy, approving the appointment by the creditors of the above-named bankrupt of Frank M. Bosworth, Frank P. Hakes, and George W. Driscoll as trustees of the estate of said Syracuse Paper & Pulp Company.

Benj. Stoltz, for six creditors.

Henry G. K. Heath, for J. S. and W. R. Eakins, creditors.

Hiscock, Doheny, Williams & Cowie, for trustees and other creditors.

RAY, District Judge. The petition in bankruptcy was filed in this case June 17, 1908, not August 17, 1908, as stated in the petition of review. On the same day, on all the papers and a full hearing and examination of Geo. W. Driscoll as to his connection, with and relations to the alleged bankrupt, this court appointed Frank P. Hakes, of Cortland, N. Y., a person selected by the court because of his known integrity, long business experience, education, and good judgment, and entire disassociation with said alleged bankrupt and its officers, and said Driscoll, receivers of the estate of said paper and pulp company. I then was and still am of the opinion that some one fully acquainted with the operations and business of the company should be associated in the administration and winding up of its affairs. Soon thereafter, and early in July, an order was made for the examination of the officers of the alleged bankrupt and a full and complete inspection of its books and papers, to commence, as my recollection serves, July 20, 1908. This order was made on application of Mr. Stoltz, who represented certain creditors, including those, or some of those, who now object. This was done to enable a full discovery, so far as practicable, in advance of the election of a trustee. This afforded every opportunity to ascertain the real creditors of the bankrupt, etc. All the claims voted on and questioned here were included in the schedules and appeared on the books of the company. If there was valid objection to these claims in question here, or any one of them, it would have been easy to prepare in advance, or on the day of the first meeting of creditors, properly verified objections to the claims, which could have been filed on that day.

The first meeting of creditors was duly called and held on the 5th and 6th days of August, 1908. At that meeting there was a lively contest over the appointment of trustees. Three tickets were in the field. One ticket was for the appointment of three trustees, and the others for the appointment of one trustee. The minutes of the meeting show that some informal proofs were rejected; but no question is raised as to the propriety and legality of such action. One hundred and sixty-six votes were cast for each ticket, and Frank P. Hakes of Cortland, Frank M. Bosworth, of Watertown, and George W. Driscoll, of Syracuse, on one ticket, received 85 votes each, representing $215,380.04 of the proved and allowed claims; William A. McKenzie, Jr., on another ticket, received 6 votes, representing $12,806.08; and Geo. D. Chapman, on another ticket, received 75 votes, representing $112,173.52 of such claims. It is seen that Hakes, Bosworth, and Driscoll had a clear majority of 4 over all and a plurality of 10 over Chapman. The intelligence and general character and ability of Mr. Driscoll cannot be questioned. Hakes and Bosworth are pre-eminently fit for the place; Bosworth being skilled in the business he is to care for and settle, and Hakes having proved his abil-

ity and integrity while acting as receiver. From the fact that Heath and Stoltz represented creditors, or were able to control the votes of creditors, to the number of 75, it is evident they had been working up the election of Chapman. Mr. Heath, or Mr. Stoltz, or both, orally objected to the following claims: Hannawa Falls Water Power Co., $7,299, on the ground it was a claim against other companies, or one of two other companies. Commercial National Bank, $6,802.37, on ground it had, with knowledge of insolvency, received a preferential payment within four months. National Bank of Auburn, $25,159.69, on same grounds. Salt Springs National Bank, $7,563.69, on same ground. Salt Springs National Bank, $9,139.50, same ground. Jefferson County National Bank, $15,523, same ground. Utica Trust & Deposit Company, $3,976.19, same ground. State Bank of Syracuse, $77,181.15, same ground. Skaneateles Railway Company, $1,920, on ground services were rendered to Rose & Moses Pulp & Paper Company. Rose & Moses Paper & Pulp Company, $36,536.02, on ground it is not a provable claim, and bankrupt not indebted to it in any sum whatever. Pottsdam Paper Mills, $3,941.46; George W. Phelps, $1,-792.25; George W. Phelps, $575.75; G. Wittner, $8,100.97; Battle Island Paper Company, $12,585.99; John C. Lutz, $2,840—and also numerous small claims, on the general ground, in nearly every case, that it was not a provable claim, and that alleged bankrupt was not indebted to the claimant in any sum, and frequently was added the objection that a preference had been paid and received with knowledge of insolvency. These general oral objections, not reduced to writing, or signed by any one, or verified, were made to substantially every claim voted in favor of Hakes, Bosworth, and Driscoll.

The objections having been made and overruled, no offer having been made to substantiate the objections by proof, and nothing appearing tending to impeach the validity of the claims, the referee announced that the election of a trustee was in order. Mr. Heath then objected to the election of a trustee on the ground that he had a right to have the claims to which he had objected, and where his objections were overruled, heard upon the evidence, and requested an adjournment for that purpose. This was an objection to proceeding to the election of a trustee without an adjournment. No evidence was offered to sustain the objections, and there was no claim made that evidence, if any, to sustain the objections was not then at hand. The referee ruled that to try out the objections would take more time than was at his disposal, and overruled the objection. This was equivalent to denying an adjournment for the purpose of trying the various and numerous objections on the merits. It was evident to the referee, and is evident to the court, that to have taken time to try out the question of the validity of these objections would have required weeks of time. The objections were not verified or reduced to writing. Evidently they were made at random and for purposes of delay. It was essential to the due administration of the estate that it proceed with reasonable diligence. The opportunity given for the examination of the officers and books of the company had developed nothing, so far as appears, against these claims. If so, that record could have been pro-

duced as a basis or ground for the objections. The claims, so far as allowed and voted upon, were regular upon their face and apparently valid. The claims stood proved, and were entitled to allowance, unless met and overthrown bv proof. Whitney v. Dresser, 200 U. S. 532, 26 Sup. Ct. 316, 50 L. Ed. 584, and cases there cited.

But the allowance of a claim is not final; for if, at a later time, it is desired to open it and try but its validity, it can be done. And it is the duty of the referee and judge to afford such a rehearing on a prima facie case. True, the trustee or trustees represent the creditors, and this reopening of a claim is done by the trustees; but if a creditor, one or more, makes a prima facie case, and asks the trustee to take measures for the opening of a claim, and he refuses, an appeal to the referee or court would effect the desired result, and perhaps result in the removal of the trustee. The referee, in the absence of verified objections, and in the absence of any offer of evidence to sustain the oral objections made, overruled the objections in most instances and proceeded to obey the statute, which is imperative that the trustee shall be elected or appointed by the creditors at their first meeting. Bankr. Act, July 1, 1898, c. 541, § 44, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438):

"The creditors of a bankrupt shall, at their first meeting after the adjudication * * * appoint one trustee or three trustees of such estate. If the creditors do not appoint a trustee or trustees as herein provided, the court shall do so."

I do not doubt that it is competent for the trustee to adjourn this first meeting of creditors for a reasonable time, and from time to time when necessary, and in a proper case it is his duty so to do. But when it is apparent, as it was here, that certain attorneys in their own interest take it upon themselves to orally object to all, or substantially all, claims presented which may be voted against their nominee for trustee, and fail to file written and verified objections, or to offer then and there some evidence tending to support those made, and it is apparent that to try out the validity of such unsupported oral objections would unduly postpone the election of a trustee or trustees, it is the duty of the referee to obey the spirit and letter of the law and proceed with the election of a trustee. Any other course in such a case should not be tolerated. It is quite true that the creditors are to elect the trustee; but it is also true that at the first meeting they are to perform this duty, and that they should come prepared to act with reasonable expedition, and that these matters should not be dragged along on mere oral objections to verified claims apparently valid, and which are conceded by the bankrupt to be valid. And verified claims, presumptively valid, and which are entitled to probative force, which in effect prove themselves, should not be held up or denied allowance or participation in the election of trustees on mere oral objections in any case, unless some written evidence is placed before the court tending to impeach their validity, or some oral evidence is offered at the time having that tendency, or it is made to appear that such evidence exists, but cannot be then obtained and presented.

As the vote for trustee was being taken, objections were made to a vote being allowed on certain claims. The most of these objections, if not all, were clearly frivolous. A vote on the claim of Mr. Latterner was objected to on the ground that the claimant was an employé of the bankrupt company, and therefore not a proper person to vote for the election of a trustee. No such disability is imposed by the bankruptcy act or by common sense. It might be that two-thirds of the creditors of the bankrupt company were employés of the concern. Are they to be debarred from voting on the suspicion that they may have a friendly feeling for the company which has given them employment? A vote on the claims of John C. Lutz was objected to on the ground that he was a stockholder in the corporation, and not a proper person to unite in the selection of a trustee. A vote on the claims of G. Wittner were objected to on the same ground, with the addition that he was also a director. The law imposes no such disability on the creditor of such a corporation who happens to be a stockholder or director therein, and there is no valid reason why he should be debarred from voting for trustee. To be a stockholder in or attorney for a corporation may be a bar to his holding political office in the minds of those who would strike down corporate industries, or in the minds of political demagogues; but this socialistic doctrine has not yet been applied by the Congress of the United States to creditors of bankrupt corporations who have been so unfortunate or unwise as to become stockholders therein. Political preferment may be denied by the people to stockholders in corporations, and laws may be hereafter enacted which will deny property rights to that, now unfortunate, class of our citizens, as a punishment for association with corporations; but such disabilities are not yet written upon the statute books of these United States of America. This court declines to anticipate legislation in that regard. Cases may arise where the directors of a bankrupt corporation, also creditors thereof, may seek to control the election of the trustee in the interest of the bankrupt itself, and in opposition to the interests of the general creditors. In such a case I do not doubt that the referee or judge has the power to set aside such an election, if made; but it would be on other grounds than that the directors were not entitled to vote for the appointment of the trustee. In this case there was no combination of directors; no attempt to elect trustees in the interest of the bankrupt corporation. As stated, two of those elected and confirmed by the referee are men of the highest probity and business ability, and entirely disinterested; and the inclusion of Driscoll, familiar with all the books and affairs of the company, was wise and proper. Should he attempt to hide or cover the transactions, or balk proper legal proceedings, it would be ground of removal, and the referee should not hesitate to report the facts, and this court would speedily remove him.

It was suggested on the argument that there is a possibility that it will become the duty of the trustees to bring action against some or all the directors, including Driscoll, and that he, as trustee, cannot sue himself as director, or as an individual. There will be ample opportunity to cross that bridge when reached, if it ever is; but I am

of opinion that a trustee as such may be party complainant or plaintiff as such, and also defendant as an individual. In this case Hakes and Bosworth may prosecute all necessary actions, making Driscoll as director or personally, or even as trustee, a party defendant, stating the necessity for such action. 1 Foster's Fed. Pr. p. 148, § 42; Harding v. Handy, 11 Wheat. 103, 6 L. Ed. 429; Wisner v. Barnett, 4 Wash. C. C. 631, 642, Fed. Cas. No. 17,914; Barry v. Missouri, etc. (C. C.) 27 Fed. 1, per Wallace, J.

The creditors and all of them are at liberty to examine the directors, including Driscoll, and if it shall develop that he is an improper person to act as trustee, or that his presence as such interferes with the due and proper administration of the estate, he can be removed. No self-respecting court would hesitate a moment to take such action. There was a clear majority in number and amount voting for Hakes, Bosworth, and Driscoll. I have examined all the cases cited, and find nothing that would require, or even justify, the setting aside of their appointment. In fact, when the motion was made before the referee for the confirmation of the appointment or election made by the creditors, no objection was raised to either Hakes or Bosworth. It is not the policy of the law to hamper and delay the administration of the estates of bankrupts, but to expedite it. In the Matter of Cohen (D. C.) 131 Fed. 391, a large number of claims were objected to. The referee did not pass on them, but appointed a trustee himself. Held proper. In this case it is evident the referee, who confirmed the action of the creditors, would have appointed Hakes, Bosworth, and Driscoll. In Re Blue Ridge Packing Co. (D. C.) 125 Fed. 619, it was held that:

"The fact that one who is chosen by the creditors as trustee in bankruptcy advised the voluntary assignment under the state law which constituted the act of bankruptcy does not render him incompetent as trustee. * * * The fact that one who is chosen by a bankrupt's creditors as trustee had a law office with an attorney who represented certain stockholders of the bankrupt, who claimed to be creditors, but whose claims were to be contested, and that these persons were former clients of the trustee, and put their claims into his associate's hands at his suggestion, and that the trustee's election was with the aid of such persons, is insufficient to make his election an improper one, but merely calls for its close scrutiny. * * * The selection by a bankrupt's creditors of a trustee is not to be interfered with by the court, unless it clearly imperils the fair and efficient administration of the estate."

In some of the cases those proposing to vote for trustee have refused to answer pertinent questions tending to show that the trustee was being elected by their votes in the interest of the bankrupt concern, and not in the interest of the creditors. An election by such votes should not be sustained; but this case presents no such feature. In Re Eastlack (D. C.) 145 Fed. 68, Judge Lanning, after a review of the cases, at page 73, says:

"These cases establish the rule that the election of a trustee by the creditors is not to be disapproved, unless there is good reason for believing that the election has been directed, managed, or controlled by the bankrupt, or his attorney, or by some influence opposed to the creditors' interests. The proofs in this case show that at a large meeting of the creditors of Mr. Eastlack, called by him before he filed his petition in bankruptcy, he told them of his intention to file such petition, and of his belief that his assets, if wisely

disposed of, would exceed his liabilities, and then expressed the hope that he might be accorded the privilege of naming his trustee. On being asked whom he would suggest, he named Dr. Grace, who was thereupon nominated by one of the creditors, and to whom no objection was made. After he had filed his petition, his attorney, learning that some of the creditors were endeavoring to secure the election of another person as trustee, prepared a draft of the letter set forth in the referee's certificate. This letter was sent, it is true, 'to substantially all the creditors,' but not by the bankrupt or his attorney, but by and over the name of one of the creditors. The letter speaks, indeed, of Dr. Grace as the bankrupt's nominee. But neither the bankrupt nor his attorney attempted directly to control or influence the election. All that the bankrupt did, to which any objection is made, was to say in a public meeting of his creditors, and not privately to a limited number of friendly creditors, that he would like to have Dr. Grace as his trustee; and all that his attorney did was to prepare a draft of a letter which one of the creditors—a large creditor, having a claim exceeding $5,100—sent to the other creditors recommending the election of Dr. Grace. Bankr. Act July 1, 1898, c. 541, § 44, 30 Stat. 557 (U. S, Comp. St. 1901, p. 3438), gives to the creditors the right to elect a trustee, and their election should be permitted to stand, unless it clearly appears that in conducting it some principle of law intended to secure the administration of the bankrupt's estate in the interest of the bankrupt's creditors has been violated."

I find nothing that indicates that these trustees, or any one of them, will be influenced in their action by anything aside from an honest and conscientious desire to promote the interests of the creditors and secure an honest and intelligent administration of the estate, and I am also satisfied that they are the choice of a majority in number and of a very large majority in amount of the honest bona fide creditors of the bankrupt.

The order of the referee, affirming the action of the creditors, is therefore approved and affirmed.