## In re PLOYD.

(District Court. M. D. Pennsylvania. December 19, 1910.)

No. 1,702, In Bankruptcy.

1. BANKRUPTCY (§ 123*)—ELECTION OF TRUSTEE—CLAIMS—VALIDITY.

Where certain claims against a bankrupt were unquestionably valid, it was no reason for excluding the holders thereof from their right to vote at an election of a trustee that the claims were due to the bankrupt's counsel and clerk, and that, by reason of that fact, they were likely to be voted in the interest of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 123.*]

2. BANKRUPTCY (§ 126*)—TRUSTEES—ELECTION—ACTIVITY OF BANKRUPT.

Evidence *held* to require a finding that a bankrupt was unduly active in an election of a trustee, and that such election should be set aside at the instance of objecting creditors as violating public policy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 126.*]

In the matter of bankruptcy proceedings of Fletcher W. Ployd. On certificate of the referee sur election of H. M. Bretz, as trustee, to which various creditors excepted. Election set aside, and new election ordered.

Charles L. Bailey, Jr., for excepting creditors.
W. M. Hargest, opposed.

ARCHBALD, District Judge. At a meeting of creditors, held for the purpose of choosing a trustee, two persons were voted for—H. M. Bretz and E. M. Winters—Mr. Bretz being supported by 37 creditors, with claims aggregating $7,266.80, and Mr. Winters by 29 creditors, with claims aggregating $7,019.03; in accordance with which Mr. Bretz was declared elected, and his selection was approved by the referee. It is claimed, however, that the election was invalid, Mr. Bretz being the choice of the bankrupt, and put forward in his interest, and also being disqualified because of having solicited and secured numerous claims on information furnished by the bankrupt in advance; also, that the claims of Hargest and Hargest and of David Philips, counsel for the bankrupt, of George E. Schaffner, a brother-in-law, and of E. E. Mansberger, a clerk, all of whom voted for Mr. Bretz, should not, by reason of their close relation to the bankrupt, have been allowed to participate; while, on the other hand, the claims of the Harrisburg National Bank, C. L. Brinser, and C. L. Brinser & Co., which were rejected by the referee as being secured, should have been received and counted for Mr. Winters, the effect of which would have been to reverse the result.

There can be no serious question, however, as to the propriety of the rulings made by the referee with regard to the disposition in the first instance of these controverted claims. Mr. Weiss, who was an indorser on the note held by the Harrisburg National Bank, had a judgment which was a lien on the bankrupt's real estate, and the claim was thus brought within the express terms of the law as being secured. And the same is true as to the claims of C. L. Brinser and C. L. Brin-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ser & Co., both of which were protected by the agreement with the bankrupt, which was produced. Nor, on the other hand, could the trustee disallow the claims of Hargest and Hargest, David Philips, George E. Schaffner, or E. E. Mansberger, for the reasons assigned against them. These, beyond question, were valid debts, and it was no ground for excluding them that they were due to the bankrupt's counsel, his brother-in-law, and his clerk. Nor does it affect this that by reason of these several relationships they were likely to be voted in the interest of the bankrupt, which goes not to the legality, but to the result of the vote. It must therefore be accepted that of the votes legally cast at the meeting Mr. Bretz received a majority in number and amount, so far as that goes.

This does not, however, dispose of the whole case. The question is not whether Mr. Bretz got the necessary votes, but whether, under the showing made, with regard to the way this was brought about, it should be allowed to stand. The trouble is that the bankrupt had too much to do with the result. Undue activity on the part of a bankrupt in the selection of a trustee has always been discountenanced by the courts, and, where it appears, the trustee chosen should not as a rule be approved. In re Wetmore, 16 N. B. R. 514, Fed. Cas. No. 17,466; In re Bliss, 1 Ben. 407, Fed. Cas. No. 1,543; In re Lewensohn (D. C.) 3 Am. Bankr. Rep. 299, 98 Fed. 576; In re Rekersdres (D. C.) 5 Am. Bankr. Rep. 811, 108 Fed. 206; In re Hanson (D. C.) 19 Am. Bankr. Rep. 235, 156 Fed. 717. "It may be taken as an established proposition upon reason and authority," says Judge Day, in Re John F. McGill, 5 Am. Bankr. Rep. 155, 106 Fed. 57, 45 C. C. A. 218, "that interference by the bankrupt, certainly when such as to control the election, will avoid the choice thereby attained, as it is the policy of the law to secure a trustee who is the selection of the creditors, and not of the bankrupt." This is not to say that a person may not be chosen who is acceptable to the bankrupt. In re Eastlack (D. C.) 16 Am. Bankr. Rep. 529, 145 Fed. 68. It is the activity of the bankrupt in bringing about the selection that is prohibited, and that it was present here is clear. The bankrupt's petition was forwarded by mail to the clerk, at Scranton, September 5, and almost before it had reached its destination, and certainly before any information about it had got back to Harrisburg, Mr. Bretz was actively engaged in sending out letters to creditors of the bankrupt, soliciting their claims. Solicitation is unprofessional, and not to be encouraged; and, while there may be nothing which absolutely prohibits it, when it is done in the interest of the bankrupt, in order to control the election of the trustee, the court should see that it does not succeed. In the present instance knowledge that the petition had been filed, and who were the general creditors, could only have been obtained from the bankrupt or his attorney, and that it was upon suggestions from that source that Mr. Bretz became a candidate and entered on the solicitation of claims, there can be no doubt. It is testified by F. E. Smith, a creditor, that the bankrupt told him Mr. Bretz was his man, and would "take care of us." And, while this is denied by the bankrupt, his activity and interest in the matter is evident, even if this particular statement was not made. The bank-

rupt's counsel voted for Mr. Bretz, as did his brother-in-law and clerk; and it was on objections of the bankrupt, feebly seconded as creditor by A. B. Tack, that claims which made the election of Mr. Bretz possible were thrown out. The position of the trustee should be an impartial one, and in no case more than the present ought this principle to be maintained. He represents the creditors, and not the bankrupt, except remotely in the contingency that the estate is sufficient to pay every one in full, and no one contends that there is any possibility of that here. Indeed, it is a question whether it will reach beyond the claims that are secured. The election in controversy was a close one; 29 creditors with claims amounting to $7,000 voting for Mr. Winters, while 37 creditors with claims amounting to $7,200 voting for Mr. Bretz. This slight preponderance secured by the instrumentality of the bankrupt cannot be sustained. Mr. Bretz is too close to the bankrupt and too dependent upon him for his election to allow it to stand. It may be that Mr. Winters, the candidate of the other creditors, is as far the other way, and that a new man, who will be entirely disinterested, should be taken up. But the only question now is as to Mr. Bretz, and I am decidedly of the opinion, for the reasons given, that his selection should not have been approved by the referee. This is no reflection on the ability or integrity of Mr. Bretz, which are not involved. It is simply that the policy of the law is opposed to the method by which it was brought about.

The election is set aside, and the referee is directed to call a new meeting of creditors for the purpose of choosing another trustee.