### In re ROTHLEDER.

#### (District Court, S. D. New York. February 3, 1916.)

1. BANKRUPTCY ⊚⟲123—TRUSTEE—ELECTION BY CREDITORS—RIGHT TO VOTE.
   There is no reason in law or morals why a relative of the bankrupt who is a legitimate creditor cannot vote for a trustee the same as any other creditor.
   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 171–179; Dec. Dig. ⊚⟲123.]

2. BANKRUPTCY ⊚⟲123—TRUSTEE—ELECTION BY CREDITORS—CONDUCT OF ELECTION.
   The fact that the attorney for the bankrupt, when certain creditors asked him to represent them, declined to do so and referred them to an attorney in his office whom he sometimes employed but who was also engaged in practice for himself, and thereafter suggested to that attorney and the creditors that the receiver already appointed in the case would be a satisfactory trustee, does not authorize the rejection by the referee

⊚⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of the votes of those creditors for the receiver as trustee; there being nothing to warrant an inference that the bankrupt was interested, in the election.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 171-179; Dec. Dig. ☞123.]

3. BANKRUPTCY ☞127—TRUSTEE—APPOINTMENT BY REFEREE.

Nor do those facts show an abuse of discretion by the referee in appointing the receiver as trustee after the failure of the creditors to elect one.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 183; Dec. Dig. ☞127.]

4. BANKRUPTCY ☞126—TRUSTEE—ELECTION BY CREDITORS—APPROVAL.

Election of a trustee will be disapproved, where it was obtained through the active efforts of the bankrupt.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 182, 184, 187; Dec. Dig. ☞126.]

5. BANKRUPTCY ☞126—TRUSTEE—ELECTION BY CREDITORS—APPROVAL.

No rule of action applicable to every case can be laid down to govern approval or disapproval of the trustee elected by the creditors, but each case depends upon its particular circumstances.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 182, 184, 187; Dec. Dig. ☞126.]

In Bankruptcy. In the matter of Harry Rothleder. On application by certain creditors to review the action of the referee in bankruptcy in appointing a trustee after failure of election. Appointment by referee sustained.

Stephen B. Rosenthal, of New York City, for the motion.
Charles L. Greenhall, of New York City, opposed.

MAYER, District Judge. This is an application to review the action of a referee in bankruptcy in appointing a trustee after a failure of election. The application to the referee was made more than 10 days after the referee made his order, but the referee relaxed the rule and allowed the petition.

At the outset, counsel seeking the review states in his brief:

"We desire to have it understood at the outset that no claim is made that Mr. Lesser is not qualified, both from experience and from his well-known integrity at the bar, from acting as trustee."

It is insisted, however, that the referee erred in allowing and counting certain votes cast for Mr. Lesser, and that, if these had been excluded, then the candidate of the creditors represented by Mr. Rosenthal would have been elected.

The papers which come up from the referee are meager of information in some respects, but it was stated on argument that there was no dispute between the parties in regard to the facts, and what was stated on argument, as well as what was before the referee, is referred to in the briefs of the attorneys.

To illustrate: There is nothing in the testimony before the referee to show that the creditors, whose votes were objected to, were rela-

tives of the bankrupt; but, as this is a fact, I am assuming I have it before me.

Similarly, as a certain circular letter issued by Mr. Rosenthal's firm was referred to on the argument before me, and later was read by me, and as there is no question that that letter was sent out, I am assuming that I have that before me. I am taking this course so as to obviate the necessity of sending back the matter to the referee, thus avoiding expenditure of needless time and money when everybody is agreed as to what the facts are.

At the first meeting of creditors held before the referee, two candidates were nominated for trustee. One was Henry Lesser, an attorney who had been appointed receiver by Judge Hough, and who, when appointed, was an outside disinterested person in no manner concerned with the subject-matter. In addition to what Mr. Rosenthal says about Mr. Lesser, it may be stated that Mr. Lesser is known to the court as an upright practitioner, especially experienced in the bankruptcy law. The other candidate was Harry Eisenbach, who happens also to be known to the court as a reputable and experienced fur merchant. We thus have two men, either of whom is qualified, from every standpoint that affects him personally, to act as trustee.

Ten claims aggregating $4,747.42 were voted in favor of Mr. Lesser and twelve claims aggregating $4,445.69 were voted in favor of Mr. Eisenbach. Of the latter, one creditor's claim amounted to $2,461.61. Objection was made to the voting of four claims aggregating $2,373, for Mr. Lesser upon the ground that they were voted in the interest of the bankrupt because they were voted by an attorney who was in the employ of the attorney for the bankrupt. These four claimants were relatives of the bankrupt. The validity and the correctness of their claims were not questioned. There is no evidence that they were procured by the bankrupt or his attorney for the purpose of voting for Mr. Lesser. It was not suggested that they were solicited by the bankrupt or his attorney, nor was it said or claimed that there were any transfers or preferences to be set aside, nor any property concealed to obtain, or that the trustee had anything to do in this case, except perform the usual and ordinary administrative functions.

The referee, having refused to disqualify these claims from voting, found that neither of the candidates had a majority in number and amount, and he thereupon appointed Mr. Lesser as the trustee. The only claims voted for Mr. Eisenbach were voted by Mr. Rosenthal by virtue of powers of attorney. It appeared on the argument of the motion that Mr. Rosenthal's firm had written letters to some creditors asking them to send their claims to them so that they might be filed, and some claims were received as a result of this letter and were voted, although the letter did not state that powers of attorney were also desired for the purpose of voting for the trustee.

It would seem therefore that at least some of the creditors who confided their claims to Mr. Rosenthal as their attorney in fact depended upon his judgment to vote for a competent person as trustee, the point here being that possibly some of the creditors did not exercise their

independent judgment in respect of the selection of a trustee (any more than did some of the creditors whose right to vote is challenged), but left that, as they had a right to do, to Mr. Rosenthal, who is likewise experienced in matters of procedure under the bankruptcy law (Act Cong. July 1, 1898, c. 541, 30 Stat. 544).

[1] There is no reason in law or in morals why a relative of the bankrupt, who is a legitimate creditor, shall not have the same right to vote for a trustee as any other creditor. It is true that the courts on numbers of occasions have found that relatives have interposed suspicious claims, but it is equally true that persons, in order to help their relatives, will lend them money in response to a very natural impulse, and that, when the borrower goes into bankruptcy, the relatives are just as anxious to obtain what is their just due as is any other legitimate creditor.

[2, 3] What happened in this case apparently was that Leo Rothleder, a relative of the bankrupt, came to the attorney for the bankrupt with the claims of himself and the three other relatives and wanted the attorney to vote these claims and to present them and prove them. The attorney stated it was inconsistent, as he represented the bankrupt, and suggested that he let another attorney represent him. This other attorney was in the same suite of offices with the attorney for the bankrupt and was employed by him, but also practiced on his own account—an arrangement quite familiar to those who are acquainted with the early days of many lawyers.

The attorney to whom the matter was thus referred had known Leo Rothleder for about nine or ten months, having met him at the office of the attorney for the bankrupt. The attorney for the bankrupt, when examined by the referee, stated:

"It is immaterial with me personally whether Mr. Lesser is trustee, or whether anybody else is trustee, so far as I am concerned. I have no favors to seek. I will say that all these claims I have looked up, and every dollar of money that is represented by these claims actually was loaned to the bankrupt and went into his books and into his bank, and the books of the bankrupt so show."

He was asked if he had suggested to the other attorney that the latter should vote for Mr. Lesser, as trustee, and he answered:

"I think if it came from me it was involuntary, but I think it came from Leo Rothleder. As far as I am concerned, it is absolutely immaterial to me who is trustee in this matter."

The other attorney, upon being asked whether the attorney for the bankrupt had suggested that he vote the claims for Mr. Lesser, answered:

"That was suggested to me, yes. I know Mr. Leo Rothleder came to me and gave me his claim."

The first part of this answer is ambiguous because it does not state who suggested, but I will assume that it means that it was the attorney for the bankrupt who made the suggestion.

Reading the testimony, and especially the part to which attention has been called, it is easy to infer what the attorney meant by the use of

the expression "involuntary." It is probable that the inquiry was made as to who would be a good man for trustee, and the attorney for the bankrupt may very likely have said that Mr. Lesser was already the receiver of the court and would be a proper man, or that there would be no opposition to him.

The record as it stands is fragmentary, and a great deal of emphasis is sought to be laid on the word "involuntary" in connection with the answer of the attorney for the bankrupt.

From this record, it appears that Mr. Lesser knew nothing of any suggestion to vote for him. There is not a scintilla of evidence that the bankrupt himself suggested Mr. Lesser. There is nothing to indicate, at the time Leo Rothleder came to the office of the attorney for the bankrupt, with the claims of himself and the three other relatives, that there was any question of a contest for the trusteeship. There is not in the case the slightest or most remote suggestion or inference of the character to be found in some other cases where it appears that the bankrupt either openly or secretly endeavored to control or influence the selection of a trustee.

[4] What the reported cases have held is that the election of a trustee will be disapproved where that result has been obtained through the active efforts of the bankrupt, and the reason for and wisdom of such a rule are apparent.

In the cases of In re McGill, 106 Fed. 57, 45 C. C. A. 218, and In re Hanson (D. C.) 156 Fed. 717, the language of the courts must be read in connection with the facts, and these cases show in each instance that the bankrupt was actively concerned with the election of the trustee.

[5] It is rather difficult to lay down rules of action which will be applicable in every case, because in matters of this character the facts are the controlling feature. Ordinarily, it is not hard for the court to determine whether on broad principles, or as affecting a particular situation, claims should be rejected or the election of a trustee disapproved. The question is always one of good faith, and the inquiry must be as to whether anything has been done by the bankrupt which will disqualify, or tend to disqualify, a trustee from acting in that impartial and vigorous manner which will assure the proper results for the creditors.

In Re Merritt Construction Co., 219 Fed. 555, 135 C. C. A. 323, the court said:

"The approval by the referee and district judge of the appointment of a trustee by the creditors is a matter of discretion, depending upon the circumstances of each case. The choice of the creditors should not be overruled by the referee or district judge except for substantial reasons, and the confirmation by the district judge of such appointment should not be disturbed by this court unless an abuse of discretion appear."

Such is probably the rule everywhere, but certainly it is the rule in this circuit, and, as Judge Ward points out, the court must look into the circumstances of each case, and numerous illustrations in the books show that the decisions of the courts go to the real merit and heart of the controversy and do not deal in mere academics. In re Syracuse Paper & Pulp Co. (D. C.) 164 Fed. 275; In re Eastlack (D. C.) 145

Fed. 68; In re L. W. Day & Co., 178 Fed. 345, 101 C. C. A. 461; **In re Stradley & Co.** (D. C.) 187 Fed. 285; In re Fisher (D. C.) 193 Fed. 104. Had the referee excluded the claims voted for Mr. Lesser, I think he would have erred.

With a full understanding of the situation, he exercised his discre-tion, and I am unable to find any abuse in that exercise. Indeed, I think it would be very unfortunate if the court were to hold that a reputable member of the bar should be prevented from acting where it appears that: (1), By virtue of having been appointed a receiver he is familiar with the administration of the estate; (2) he has not in any manner requested election as a trustee; (3) his nomination was made by an attorney for some of the creditors; (4) his election was not participated in at all by the bankrupt, but at most only referred to by the attorney for the bankrupt; (5) the attorney for the bankrupt did not urge his election before the referee, but took an indifferent attitude for good reasons stated; and (6) there was not the slightest suggestion that the claims were not valid in every respect.

The referee is sustained. Settle order on one day's notice.