## In re ALLIED OWNERS' CORPORATION.
### No. 25012.

District Court, E. D. New York.

Sept. 12, 1933.

Salkin & Korn, of New York City, for Thompson-Starrett Co., Inc.

Chadbourne, Stanchfield & Levy, of New York City, for creditors.

Stephen Callaghan and Percival E. Jackson, both of New York City, trustees.

Robert P. Levis, of New York City, for petitioning creditors.

Charles H. Kelby, of New York City, for Mr. Greve and creditors.

Effingham Evarts, of New York City, for Reconstruction Finance Corporation.

Cullen & Dykman, of Brooklyn, N. Y., for William M. Greve, petitioner for motion.

MOSCOWITZ, District Judge.

There is presented for determination herein two petitions for review of the order of the referee disapproving the election of William M. Greve as trustee in bankruptcy. Inasmuch as both petitions for review are predicated upon the same alleged error and seek the same ultimate relief, they shall be considered and discussed herein as a joint petition.

On the 8th day of August, 1933, a petition in bankruptcy was filed by the Allied Owners' Corporation, and thereafter pursuant to such petition it was duly adjudged a bankrupt and the proceedings were referred to the referee herein. A first meeting of creditors was held on the 21st day of August, 1933, before the referee, at which time an adjournment was requested in behalf of the Reconstruction Finance Corporation, a holder of notes of the bankrupt in the principal sum of $1,200,000,

in order that the selection of trustees in bankruptcy might be submitted to the directorate of the Reconstruction Finance Corporation at Washington. Thereupon the meeting was adjourned until August 25, 1933.

At the adjourned first meeting of creditors a majority in number and amount of the creditors were present or represented, whereupon the referee proceeded with the election of trustees. However, before any nominations were offered, the referee made the following statement (S. M. 21–23):

"The Referee: Gentlemen, are we ready to proceed with the election of a trustee in this matter?

"Before we do, I want to make this statement that of course, under the Bankruptcy Act the creditors have the right to appoint a trustee or trustees, and that is their exclusive right, and in the event they neglect to do it then the court appoints the trustees.

"There is a further provision of the general orders of the United States Supreme Court No. 13, that the appointment of the trustee is subject to the approval or disapproval of the Referee or Judge. So that after you by a majority in number and amount of claims appoint your Trustee it is necessary for me then to approve or disapprove of the appointment.

"It is my desire that the creditors have every discretion in the matter of exercising their power in the appointment of a trustee, and it is the question of each individual named by them as to his, in my opinion, being fitted as a trustee, and I will either approve or disapprove it.

"But, irrespective of any individuals you might name,—and this has arisen in the past so I make the statement now so that we won't go through any unnecessary work here in selecting trustees,—namely, that we will not approve the appointment of any trustee or trustees who have participated in or are connected with the transactions and affairs of the bankrupt, for the reason that such person would be a part of and would represent an interest adverse to the creditors. Now, I hope that I have made that clear. In other words, if someone got up and nominated the president of the bankrupt corporation and all the creditors voted for him I would not approve it. That is not restricted to the persons who may be officers or directors or stockholders of the corporation but it goes to the extent of anyone who has accepted or had responsibility for what the corporation in the past has done or had not done in connection with its affairs.

"Is there anyone that wants to ask any questions about that? We are ready to receive nominations for trustee or trustees?"

At the conclusion of the referee's preliminary statement the attorney in fact for the Reconstruction Finance Corporation nominated William M. Greve, a prominent business man, Hon. Stephen Callaghan, a former Justice of the Supreme Court of the State of New York, and Percival E. Jackson, an attorney, as cotrustees in bankruptcy.

Thereupon Hon. Charles H. Kelby, a former Justice of the Appellate Division of the Supreme Court of the State of New York, and one of the receivers of New York Investors, Inc., the owner of all of the stock of the bankrupt, taking cognizance of the referee's preliminary statement with respect to the disapproval of certain parties as trustees and in a desire to fully disclose to the court the entire situation with respect thereto, stated as follows (S. M. 23–28):

"Judge Kelby: I am one of the receivers of the New York Investors, and they own all of the stock of this subsidiary.

" *  *  * The only reason at all that I have taken the floor here is that I have intended, with my associate, Mr. Kelsey, to vote as a creditor of this corporation in favor of the nominations just mentioned.  *  *  * Now, I noted your Honor's statement about people in interest would not perhaps receive the approval of the court. I want to be entirely frank about that situation.

"Mr. Greve, one of the nominees has never been an officer of this company and never held any of the stock because all of the stock was held by the New York Investors. He was however, an officer of the Prudence Company and an officer of the New York Investors. As a matter of fact he never had any financial interest directly in this bankrupt concern. My interest in this matter is not a practical interest. This bankrupt corporation here owns several large theatre properties. Those theatre properties without the accompanying franchise to operate them as moving picture concerns would probably bring very little money on a forced sale.

"Mr. Greve, at my request and with my knowledge and consent is representing the stockholders of this corporation and has been in daily negotiations with Paramount Pictures Corporation with the idea of getting some permanent arrangement by which these theatres can be opened and operated because without operation I am afraid we would have sort of a white elephant on our hands.

"By reason of his acquaintance with the

bankrupt and of all of these transactions I believe he is better qualified than anyone I know to open up negotiations with the Paramount to continue the matter, although he has been constantly at it and yet under no obligations to do so, and to see if we cannot rehabilitate these large moving picture houses so a franchise may be granted to it and an arrangement made with Paramount Pictures, who are already in bankruptcy, to continue. It doesn't seem to me possible that this tremendous large concern of Paramount Pictures could abandon these theatres in which they have so much interest. * * *

"I am also frank to say that there have been negotiations with Reconstruction Finance Corporation and they wanted to have some check on this matter as being a large creditor as well, and they would not have had the temerity to present three names except for the fact that a very large percentage of the creditors were desirous of having the negotiations continued with a check by somebody really nominated by the Reconstruction Finance Corporation and a complete outsider as myself, in the form of my associate on the bench, Judge Callaghan.

"In my sound judgment the only chance we have to work out this very intricate problem is by negotiations with the Paramount and with the bankrupt. The most important thing is to make some working agreement to operate these very large theatres. One of the large theatres is right here at the Flatbush Avenue Extension which has been in the dark for some two months. There are three other theatres here in Brooklyn and one large one in Queens all shut down. If we can bring about a situation where those can be opened then there is some chance of working out some salvation here for the creditors. I am only representing the stockholders. The creditors have a prior interest in this matter, and with this frank statement to your Honor of what Mr. Greve's connection with this enterprise is, I say he is not financially interested in it at all; I say he has never been a stockholder and never been an officer in this corporation at all; he is connected with these affiliated corporations and is trying to work out for their benefit some scheme to save these assets. It seems to me that Judge Callaghan and the other man checking it up, and the fact they have to report for the approval of the court on any contracts that have been made,—that I think these nominations are for the best interests of the creditors."

The referee then inquired if there were any further nominations for trustees. No creditors being opposed to the nominees and hearing no other nominations or objections thereto, the referee announced that the creditors present had unanimously elected William M. Greve, Stephen Callaghan, and Percival E. Jackson as cotrustees in bankruptcy.

The referee thereupon approved the election of Stephen Callaghan and Percival E. Jackson, being satisfied that they represented no interest adverse to the creditors; but in view of Judge Kelby's statements concerning William M. Greve's participation in the affairs of the bankrupt, the referee called upon him to state his associations or participation therein whereupon he stated (S. M. 32–33):

"Mr. Greve: I have never been an officer or director. I am trying to use whatever influence I might have in trying to help out these affairs where they became involved during the Paramount failure or bankruptcy. They have had the election of a trustee in that bankruptcy and they have had negotiations with bankers representing the Paramount, exhaustive negotiations with Loew, who was also mixed in this, and I am trying to help the officers to get around to some kind of an understanding so that the Paramount Theatres might be opened. It goes further than that. These theatres have to continue to be opened and new negotiations entered into on a permanent basis, which means more negotiations with bankers and more negotiations both with Loew and with Paramount. I happen to know all of those gentlemen very intimately for many years and I am trying to do the best I can for creditors. I have never received a cent of salary or a cent of expense money or anything else."

The referee thereupon disapproved the election of William M. Greve stating (S. M. 33, 34):

"The Referee: Well, gentlemen, on Judge Kelby's statement and on Mr. Greve's statement I believe I will have to disapprove of the appointment of Mr. Greve, which disapproval carries with it no reflection or criticism in any way of the gentleman personally or of the statements that have been made about his activities in the affairs of this company and the other companies associated with him, but solely on the ground that I am convinced on the statements made here by Judge Kelby and Mr. Greve himself that he has participated in the affairs and activities of this company to the extent that as a trustee in bankruptcy he would represent an interest adverse to the creditors. When I use the

word 'adverse' I mean it in the legal sense. I don't convey the idea that I believe he would act other than in the interest of the creditors.

"For that reason I disapprove the appointment of Mr. Greve. Now, the creditors can proceed in one or two ways. They can withdraw that nomination and nominate someone else in Mr. Greve's place or, they can let the matter stand and submit an order under which I will disapprove the appointment of Mr. Greve, and petition for a review of my order which shall go up to the District Judge."

The creditors deliberated upon the action taken by the referee and determined to stand on their nomination of William M. Greve as one of three cotrustees, clearly demonstrating the fact that, notwithstanding the position taken by the referee with respect to William M. Greve, he nevertheless remained the unanimous choice of the creditors who believed that the best interest of the bankrupt estate would be subserved by his election.

An order was thereupon entered on August 25, 1933, by the referee approving the election of Stephen Callaghan and Percival E. Jackson as trustees and disapproving the election of William M. Greve. From so much of said order as disapproved the election of William M. Greve as trustee the petitions herein seek to review and revise.

The question presented is the propriety of the action of the referee in disapproving the election of one of three cotrustees elected by the unanimous vote of all of the creditors of the bankrupt present at the meeting representing more than a majority in number and amount, when such trustee was and is not an officer, director, or stockholder of the bankrupt, nor had no financial interest in the bankrupt but merely had conducted negotiations without compensation of any kind for its benefit prior to the bankruptcy at the request of one of the receivers of an affiliated company appointed by the United States District Court, which services were concededly beneficial to the creditors of the bankrupt estate and a fortiori better qualified the trustee to perform his duties.

The right of creditors to appoint a trustee is a substantial one, In re Harris Construction Co. (D. C.) 37 F.(2d) 951, 952, and the right is primarily that of the creditors of the bankrupt as bestowed upon them by section 44 of the Bankruptcy Act (11 US. CA § 72), which provides:

"§ 72. Trustees; appointment. The creditors of a bankrupt estate shall, at their first meeting after the adjudication or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, or after a composition has been set aside or a discharge revoked, or if there is a vacancy in the office of trustee, appoint one trustee or three trustees of such estate. If the creditors do not appoint a trustee or trustees as herein provided, the court shall do so."

The purpose of the Bankruptcy Act is to permit creditors to direct and supervise the liquidation of a bankrupt estate. The estate belongs to them. In re Day Lumber Co. (D. C.) 8 F.(2d) 146, 148; Atkins v. Wilcox (C. C. A.) 105 F. 595, 53 L. R. A. 118. The policy of the Bankruptcy Act as shown in its provisions is to give to creditors of the bankrupt the free, deliberate, and unbiased choice in the first instance of the persons who are to represent them and manage the assets of the bankrupt's estate. In re Lewensohn (D. C.) 98 F. 576, 578. It cannot be denied that the vital interest which creditors have in the preservation and wise management of the estate of a bankrupt must as a general rule make for the best judges of who shall be appointed as trustee and their selection cannot be arbitrarily ignored. Wilson v. Continental Building & Loan Association (C. C. A.) 232 F. 824, 827.

"The sole power conferred by the Bankruptcy Act on the referee or judge in relation to the appointment of a trustee is contained in section 44 [11 USCA § 72, supra], where it is provided that, if the creditors do not appoint, 'the court shall do so.' The act, therefore, contains no provision conferring on the referee or judge the right to disapprove an appointment made by the creditors." In re Kreuger (D. C.) 196 F. 705, 707. The right so to do is to be found in General Order 13 (11 USCA § 53) promulgated by the Supreme Court pursuant to statute, which provides: "The appointment of a trustee by the creditors shall be subject to be approved or disapproved, and he shall be removable, by the referee or by the judge."

Thus by this General Order courts of bankruptcy are vested with a supervisory power to meet emergencies and exigencies which could not be foreseen or provided for in the statute. But the emergency must not be a trivial one. It should be of grave character and due weight for the effect of the use of this supervisory power is to disenfranchise the creditors and deprive them of rights expressly conferred upon them by statute. In re Lloyd (D. C.) 148 F. 92, 93. Since this is the ultimate result of the use of this su-

pervisory power, its use must be sparingly exercised with sound judicial discretion and not arbitrarily or capriciously.

■ Courts should not assume that creditors cannot elect an impartial trustee. Their choice should be recognized and upheld unless contrary to law or it appears that the trustee so selected has interests which conflict with those of the general creditors of the bankrupt estate, In re Mayflower Hat Co. (C. C. A.) 65 F.(2d) 330, 331, or unless there is reason for believing that the election has been directed, managed, or controlled by the bankrupt or his attorney, or by some influence opposed to the creditors' interests. In re Eastlack (D. C.) 145 F. 68, 73.

■■ So far as the record herein discloses, there was no reason why the referee should have exercised the supervisory power conferred upon him. The sole reason assigned by the referee for his disapproval of the election was that it appeared from the statements made by Judge Kelby and William M. Greve that Greve's association and participation in the affairs of the bankrupt and other affiliated corporations placed him in a position of representing an interest so closely identified with the bankrupt corporation that it was adverse to the interest of the creditors. This participation, however, was at the request and with the knowledge and consent of Judge Kelby, one of the receivers, appointed by the United States District Court, performed without compensation and beneficial to the bankrupt estate. No finding was made by the referee that this participation was inimical to the interest of the creditors, but on the contrary the referee stated (S. M. 34): "* * * When I use the word 'adverse' I mean it in the legal sense. I don't convey the idea that I believe he would act other than in the interest of the creditors."

The mere fact that William M. Greve was associated with affiliated companies of the bankrupt did not disqualify him, for it has been held that a stockholder or officer of a corporation is not ipso facto incompetent to act as a trustee in bankruptcy of such corporation. In re Merritt Construction Co. (C. C. A.) 219 F. 555, 557.

There is nothing in the record herein that indicates that William M. Greve as trustee would be influenced in his action by anything aside from an honest and conscientious desire to promote the interest of the creditors and aid his cotrustees in securing an honest and intelligent administration of the estate. This court is not unmindful of the advantage which often comes by having as trustee one who is familiar with the affairs of the bankrupt, and where those interested in the estate agree upon such a selection, especially when it is unanimous as herein, and where no reason exists to the contrary, the refusal on the part of a referee to confirm such a selection is an abuse of discretion.

The creditors apparently have confidence in William M. Greve's integrity and ability to coadminister the trust in their interest, and the fact that he was and is familiar with the affairs of the bankrupt undoubtedly enhanced his desirability. Unanimity of creditors' selections of trustees familiar with the affairs of a bankrupt tend to promote creditors' interests, and there is no law against the election of a person as trustee merely because he is familiar with the affairs of a bankrupt estate.

No valid reason exists why the creditors, who have expressed a unanimous desire to have William M. Greve act as a trustee, should be deprived of his valuable experience in the type of work which the office of cotrustee will call upon him to perform, as well as the benefits which the creditors believe will accrue from his familiarity with the specific problems that will confront him in his office.

The order of the referee in so far as it disapproves the election of William M. Greve as cotrustee should be reversed.

Motions granted. Settle orders on notice.