### In the Matter of Alfonso Paul SAN FILIPPO, Bankrupt.

No. 42378.

United States District Court,
N. D. California, S. D.
March 31, 1955.

Shapro & Rothschild, San Francisco, Cal., for petitioners.

Max H. Margolis, San Francisco, Cal., for trustee Kal W. Lines.

OLIVER J. CARTER, District Judge.

The matter before this Court is a petition for review of an order of a referee in bankruptcy. The order in question appointed a trustee in bankruptcy after an election contest. Petitioners are creditors whose claims were disqualified by the referee from being voted in the election contest.

Before the bankrupt filed his voluntary petition in bankruptcy, he made a general assignment for the benefit of creditors, naming Walter J. Hempy, who is the Secretary of the Board of Trade of San Francisco, as assignee. At a general meeting of creditors a creditors' committee was appointed and all of the members of the committee were members of the Board of Trade.

After the bankrupt filed a voluntary petition in bankruptcy, the creditors' committee sent a form letter (on stationery of the Board of Trade) to the creditors, soliciting their proofs of claim. At the first meeting of creditors before the referee in bankruptcy, a contest took place over the election of a trustee. The referee sustained objections to the claims of petitioners that were obtained through the activity of the creditors' committee. Petitioners represent the overwhelming majority of the bankrupt's creditors both in number and in the aggregate amount of their claims. The minority creditors admit, and the referee specifically found, that petitioners' nominee for trustee is in all respects qualified to act in that capacity and would administer the bankrupt estate impartially, fairly and accurately. It is further conceded that petitioners' nominee for trustee is not connected or associated with the Board of Trade, or with the named assignee.

The basis on which the referee disqualified the claims solicited by petitioners is the referee's finding that in soliciting those claims " * * * it was the intent, on the part of said Creditors' Committee, acting for said Board of Trade, indirectly to keep, if possible,

some sort of control over the assets of the estate of the above-named bankrupt \* \* \* "

■ At the outset this Court takes note of the weight to be given findings of the referee in bankruptcy. The rule in this circuit is that the findings of the referee should not be set aside unless clearly erroneous. This rule received its most recent statement in the case of Earhart v. Callan, 9 Cir., 221 F.2d 160, in which the court said:

"[The General Orders in Bankruptcy] require the District Court to accept the referee's findings unless clearly erroneous. Humphrey v. Hart, 9 Cir., 1946, 157 F.2d 844; In re Skrentny, 7 Cir., 1952, 199 F.2d 488, 492."

In the case of Humphrey v. Hart, 9 Cir., 157 F.2d 844, 846, the court put it this way:

"If the master's findings were clearly erroneous, the court should have rejected them and should have made findings of its own. If not clearly erroneous, the master's findings should have been accepted as correct."

A helpful statement is also found in the case of In re Josephson, 1 Cir., 218 F.2d 174, 182:

" 'Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."

The rule stems from General Order in Bankruptcy 47, 11 U.S.C.A. following § 53:

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law; and the judge · ·

shall accept his findings of fact unless clearly erroneous."

Petitioners have advanced the argument that since General Order in Bankruptcy No. 13 was abrogated in 1939, a referee does not have the power to disapprove the election of a trustee. General Order No. 13 provided:

" 'The appointment of a trustee by the creditors shall be subject to be approved or disapproved \* \* \* and he shall be removable by the referee or by the judge.' "

■ But a similar provision is now found in Section 2, sub. a(17) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(17), which provides that courts of bankruptcy are invested with the power to:

"Approve the appointment of trustees by creditors or appoint trustees when creditors fail so to do \* \* \*."

Therefore this Court does not hold that referees in bankruptcy have lost their supervisory power over the election of a trustee; but this Court will examine the proceedings before the referee to see if that power was exercised for good cause. In the case of In re Leader Mercantile Co., 5 Cir., 36 F.2d 745, 746, the court referred to this supervisory power as follows:

"Of course, this power is not to be used arbitrarily but only for good cause, in the exercise of sound judicial discretion."

In the case of In re Allied Owners' Corporation, D.C.E.D.N.Y., 4 F.Supp. 684, 687, the court said that this power should be exercised only in an emergency, and that " \* \* \* the emergency must not be a trivial one. It should be of grave character and due weight \* \* \*."

Conceding the power of a referee to disapprove the election of a trustee, this Court must examine the order of the referee to determine whether the power was exercised for good cause, or whether the order of the referee was clearly erroneous.

██ It is elementary that the theory of the Bankruptcy Act is to allow the creditors to select a trustee. This principle is well expressed in the case of In re Allied Owners' Corporation, D.C.E.D. N.Y., 4 F.Supp. 684, 687:

"The purpose of the Bankruptcy Act is to permit creditors to direct and supervise the liquidation of a bankrupt estate. The estate belongs to them. * * * It cannot be denied that the vital interest which creditors have in the preservation and wise management of the estate of a bankrupt must as a general rule make for the best judges of who shall be appointed as trustee and their selection cannot be arbitrarily ignored."

This principle is carried into the Bankruptcy Act in 11 U.S.C.A. § 72, which provides in part:

"(a) The creditors of a bankrupt, exclusive of the bankrupt's relatives or, where the bankrupt is a corporation, exclusive of its stockholders or members, its officers, and the members of its board of directors or trustees or of other similar controlling bodies, shall * * * appoint a trustee * * *."

██ Petitioners are not within any of the classes of creditors that are excluded by Section 72 from taking part in the selection of a trustee. In view of this fact, and in view of the fact that petitioners' nominee for trustee is conceded to be competent, fair and impartial, there must be the most compelling reasons for disenfranchising the great majority of the creditors in favor of a small minority of them. The reason given by the referee is that petitioners' votes represented an attempt by petitioners to retain "some sort of control" over the bankrupt estate for the benefit of the Board of Trade. This finding is based primarily on the following facts: the creditors' committee was composed of members of the Board of Trade; the committee used the facilities of the Board of Trade to solicit proofs of claims; and if the petitioners are allowed to vote all of the claims they hold, they will control the selection of the trustee. From these facts the referee attempts to torture some adverse or conflicting interest or prejudicial association, which would disenfranchise any offending creditors, even though the trustee proposed by such creditors is under no such alleged disability except through the creditors who propose him. Such an interpretation would frustrate the purpose behind the provisions of the Bankruptcy Act authorizing the election of the trustee by creditors. Any creditor for whose benefit an assignment had been made before bankruptcy would be automatically disqualified. It commonly occurs that creditors who agree on the selection of a creditors' committee will agree on a candidate for the trustee in bankruptcy, and the mere fact that these same creditors are members of a trade association should not, without more, operate to disqualify the votes of the great majority of creditors.

No exact precedent has been cited for the action here taken by the referee. A case which comes closest to resembling the facts of the case at bar is In re Stowe, D.C.N.D.Cal., 235 F. 463; but there the court said at page 464:

"If creditors knowingly join with the bankrupt or his attorney, or with an assignee or his attorney, * * * the simplest and most obvious way to defeat their purpose is to reject their selection of trustee * * *."

Clearly the petitioners did not join with the bankrupt or his attorney, or with the assignee or his attorney, and therefore the Stowe case does not sustain the action of the referee here. Other cases of disqualification for some sort of association or relationship with the bankrupt are not in point here.

It is the opinion of this Court that no sufficient showing has been made of a basis for disqualifying the claims solicited by petitioners, and in the absence of compelling reasons for disenfran-

chising the great majority of the creditors, it is clear error to do so.

Counsel for petitioners shall prepare and present findings, conclusions and an order in accordance herewith.